[NEW YORK GENERAL TERM, September 17, 1860. *Sutherland, Allen* and *Bonney,* Justices.]

---

GRINNELL *vs.* STEWART and others.

The law will not authorize or justify a complaint against a debtor, and his arrest by the creditor, on the ground of false representations made by the accused on obtaining goods from the prosecutor, when positive evidence of the truth of such representations was furnished, or referred to, by the accused, at the time of making the representations, and it was the creditor's own fault that he did not avail himself of such evidence.

Thus, where G. on applying to S. for goods, on credit, represented that he was worth $20,000 over and above his debts and liabilities, and that his property consisted of certain specified real estate, and he referred to the records in Queens county clerk's office for the evidence of his ownership, which representations were true, and his ownership did appear by the records in such

Grinnell *v.* Stewart.

clerk's office; *Held* that these facts showed a want of probable cause for instituting criminal proceedings by S. against G. for obtaining the goods by fraudulent representations; notwithstanding it appeared that S. on a search made by him in the clerk's office, with the aid of the clerk, before instituting the criminal proceedings, had failed to discover the evidence of G.'s title.

*Held, also,* that, in an action by G. for malicious prosecution, there being sufficient proof of a want of probable cause, malice might be inferred; and that whether or not the criminal prosecution was malicious should have been submitted to the jury.

THIS was an appeal from a judgment rendered at special term, dismissing the complaint in an action for malicious prosecution and for false imprisonment. It was tried at the New York circuit before Justice DAVIS and a jury, October 15th, 1858. The complaint alleged that in 1856 the defendants caused the plaintiff to be arrested on a charge of having obtained certain property, and a contract by false pretenses; that a warrant was issued at Watertown, and sent to the sheriff of New York, who procured the plaintiff to be arrested, on the 24th December, 1856, and taken to Watertown; that he was in the sheriff's custody from that day until the 2d January, 1857, and then gave bail to answer, in the sum of $2000. The charge was dismissed by the magistrate on the 17th January, 1857. The first three paragraphs of the complaint, state a case of malicious prosecution. The fourth alleges false imprisonment as a second cause of action. The answer of Stewart, after a general denial, sets up that the defendant Stewart was one of the firm of Woodbury, Avery & Co., of which the defendant, Alfred Avery, was also a member. They owned certain property, which the plaintiff wished to purchase on credit. In answer to an inquiry by them, as to his pecuniary circumstances, he stated that he was the owner of one-half of the Fashion race-course on Long Island, which was of the value of $100,000, subject to a mortgage of $10,000, and that he was worth $20,000 or $30,000 over and above his debts and liabilities. They made the sale on credit, and took his notes—the first of which, [for $150,] fell due the 13th August, 1856, and not being

paid they sued him, and on the 17th September, 1856, obtained judgment for $164.06. An execution was issued to Queen's county, in which the race-course was situated, but returned *nulla bona*. Judgment was obtained on another of the notes, and execution issued and returned in the same manner. Two others of the notes were protested for non-payment. The answer further states, that on the 1st December, 1856, the sheriff informed the attorney of the plaintiffs in the two judgments, that he had made diligent search in Queens county for real and personal property of Grinnell, but could find none; that he particularly examined the records to see if Grinnell had title to any portion of the course, and found he had none after the 23d January, 1856, when "his interest in the property was cut off by a judgment in a suit to foreclose a mortgage, covering the whole of said race-course, and to which suit said Grinnell was a party." After this information, the defendant, Stewart, caused the records to be searched to find out whether Grinnell owned any real estate in Queens county, on the 7th June, 1856, or at any time subsequent. The clerk of the county assisted in the search, and could not discover that he had title to any. On this information, the defendants say they prosecuted the plaintiff in good faith. The defendant, Budd, put in a separate answer to the same effect, justifying himself as "agent" of Woodbury, Avery & Co. in the transaction. The defendant Avery rested on a general denial.

At the trial, the plaintiff proved a perfect title to half the Fashion course. The deed, with accompanying map, was recorded February 5th, 1855. The title was examined by Judge Brady, who paid $26,800 for the plaintiff, as the consideration for the purchase. The plaintiff showed that the foreclosure suit in which the defendants allege they supposed Grinnell's interest was sold out, was one by the proceedings in which his share in the fashion course was *exempted,* and it *never had been sold.* The complaint was dismissed, and the plaintiff appealed from the judgment.

Grinnell *v.* Stewart.

*R. D. Holmes* and *J. T. Brady*, for the appellant.

*Mullen & Merwin* and *F. E. Mather*, for the defendant.

*By the Court*, BONNEY, J. This is an action for malicious prosecution and false imprisonment. At the trial, after the testimony was closed, the presiding justice dismissed the complaint, on motion of the defendants' counsel, on the grounds, 1. That malice was not shown, on the part of the defendants or either of them, in instituting the proceedings complained of. 2. That the plaintiff had not shown want of probable cause for instituting said proceedings. 3. That the detention of the plaintiff while held under the warrant issued in said proceedings, did not amount to false imprisonment.

The proof at the trial was, that on the 16th of December, 1856, a warrant for the arrest of the plaintiff was issued by the county judge of Jefferson county, on the complaint and affidavits of the defendants Stewart and Budd, stating in substance that in June, 1856, the plaintiffs obtained from them, or their firm in New York, certain property, by falsely and fraudulently representing that he was worth $20,000 over and above all his debts and liabilities, and that his property consisted in the one half of the Fashion race-course on Long Island, of which he was owner; that he referred to the records in Queens county clerk's office for evidence of such his ownership; that the representations were false, and the plaintiff owned no such property; that on the 5th December, 1856, Budd made personal examination of the records in said clerk's office, and found that the race-course was sold, under foreclosure proceedings, on the 23d January, 1856, to Reuben Parsons, and it did not appear that the plaintiff, after that time, was owner of such race-course, or any part of it.

Under this warrant the plaintiff was arrested on the 24th December, 1856, in the city of New York, and there detained in custody, until in January following, when he was taken by an officer to Jefferson county, and the hearing of the com-

plaint was commenced before the county judge, on the 6th, and continued until the 17th January, 1857, when he was discharged and the complaint was dismissed.

When the arrest was made, Avery and Stewart were present, and told the officer who had the warrant that they could not arrange matters, and he must take the plaintiff prisoner. They said the plaintiff had made false pretenses to them that he was owner of property on Long Island, and they had searched the records and could not find it. The plaintiff then insisted that he did own the property, and had not deceived them. Stewart and Avery said they would receive $3000, or thereabouts, and release the plaintiff, and they did not wish the officer to take him directly to Jefferson county, because they wanted to give him an opportunity to settle. And they further said, if the plaintiff had not money his friends had, and he could get it.

On the trial it was fully proved that all the representations made by the plaintiff in relation to his ownership of one half of the Fashion race-course were true; that his ownership did appear by the records in Queens county clerk's office; that he acquired title by purchase at a foreclosure sale in January, 1855, and paid $26,800 in cash for the property; that his deed was recorded in said clerk's office on the 25th February, 1855, and duly indexed; and that the judgment record in that foreclosure suit was in the same clerk's office. It was also proved that on the examination before said county judge, the defendant Budd testified that in December, 1856, he went to Queens county clerk's office, and with the assistance of the clerk, found that the plaintiff had no title to any property in that county since 23d January, 1856, when said race-course was sold on foreclosure of a mortgage, and purchased by Reuben Parsons; that he made a thorough search; that the deed to Parsons and a mortgage made by him immediately after his purchase, to a man named Hearne, corresponded in the description of the premises, which were described by courses and distances; that the clerk showed him the papers, among

which he saw the report of the referee and the record of the deed to Parsons, and an entry in the book of notices of *lis pendens*.

The complaint, notice of *lis pendens*, and judgment in such foreclosure suit, and the referee's deed to Parsons under said judgment, and his report of the sale, were then put in evidence, in and by each of which it distinctly appeared that the premises so conveyed to the plaintiff by the deed recorded in February, 1855, and of which he represented himself to be the owner, were not included in the sale made to Parsons, but were expressly excepted from such foreclosure proceedings and sale, by description in nearly (if not exactly) the words of the description in said deed to the plaintiff.

By such proof the plaintiff, in my opinion, did show want of probable cause for instituting said proceedings by the defendants against him for alleged fraudulent representations. He fully and clearly proved that the representations made by him were true to every intent, and that the records to which he referred the defendants distinctly proved them to be true.

But it is said that one of the defendants, with the assistance of the county clerk, examined the records, and failed to find therein the evidence of the truth of the plaintiff's representations; and that in instituting the criminal proceedings against the plaintiff, he and the other defendants acted in the conscientious (though erroneous) belief that the representations made by the plaintiff were false, and that therefore an action for malicious prosecution cannot be maintained against them. And cases are cited for the principle that proof, however positive, of the innocence of a party accused and arrested, is not sufficient evidence of want of probable cause for making complaint against him, to sustain an action for malicious prosecution, against the prosecutor, when he appears to have acted in good faith, and in the belief that his charge was true. (*Murray* v. *Long*, 1 *Wend.* 140. *Foshay* v. *Ferguson*, 2 *Denio*, 617. *Vanderbilt* v. *Mathis*, 5 *Duer*, 304, *and cases there referred to.*)

The principle for which the defendants contend is not questioned, but in my opinion it does not reach this case. The principal if not the only ground for the complaint made against this plaintiff was, that the records to which he referred as proof of the truth of his representations were found, on examination, not to contain such proof, but to prove the reverse of what the plaintiff had asserted.    The fact was, that the records referred to, and which one of the defendants testified that he examined, did clearly and distinctly prove exactly what the plaintiff had stated.    And the defendant who testified in relation thereto, either did not see those records, or did not examine them with reasonable or indeed with any care, or he had not capacity to understand a plain statement of facts; and I do not understand that the law will authorize and justify a complaint and arrest for felony on the ground of false representations by the accused, when positive evidence of the truth of his representations was furnished by him to the complainants when the representations were made.

If, as I think, there was in this case sufficient proof of want of probable cause, malice might be therefrom inferred; and whether or not the prosecution complained of was malicious should have been submitted to the jury.    By *malice*, I understand in cases like the present to be intended not necessarily spite or hatred against the accused, but *wrong-mindedness—malus animus—*the being actuated by improper and indirect motives; and, in my opinion, upon the evidence in this case, it might very properly have been submitted to the jury to find whether these defendants, in causing the prosecution and arrest of the plaintiff, were actuated by any regard for public justice, or desire that a supposed offender against law and morals should be punished, or intended to use this form of criminal proceeding for their private benefit, to coerce from the plaintiff or his friends payment of the sum of $3000, which the defendants claimed was due to them from the plaintiff, and upon receipt of which it was proved they, or some of them, said they would release him.

The opinions above expressed render it unnecessary for me now to consider the question of false imprisonment, the decision of which, as I view the case, will depend very much if not entirely on the determination of the other questions in the action.

The order dismissing the complaint should be set aside and a new trial granted; costs to abide the event of the action.

