HENRY ANDERSON, Appellant, *v.* ELISHA M. HOW, Respondent.

In an action for malicious prosecution and false imprisonment the burden is upon plaintiff of showing the want of probable cause and malice upon the part of defendant.

Where there is no dispute as to facts the question as to the existence of probable cause is one for the court.

Probable cause is a reasonable ground of suspicion supported by circumstances sufficiently strong, in themselves, to warrant a cautious man in his belief that a person accused is guilty of the offense with which he is charged.

Maliciousness is not an element of the offense defined in the provision of the Penal Code (§ 640, sub. 3), *i. e.*, the "willfully" severing from the freehold of another any produce, or anything attached thereto. To establish the offense it is simply necessary to show that the act was done intentionally without the consent of the owner and without right. (BRADLEY, HAIGHT and BROWN, JJ., dissenting.)

(Argued June 24, 1889, decided October 22, 1889.)

APPEAL from judgment of the General Term of the City Court of Brooklyn, entered upon an order made May 24, 1886, which affirmed a judgment in favor of defendant, entered upon an order nonsuiting the plaintiff on trial.

The nature of the action and the material facts appear in the opinion.

*James Troy* for appellant. Intent is the essence of every crime; and in order to constitute malicious mischief there

must be a destruction of or injury to property out of mere wantonness and malice. (43 Ala. 330; 44 id. 380; 7½ N. C. 201; 110 Mass. 401; *People* v. *Williams*, 24 How. 350; *Wait* v. *Green*, 5 Park. 185; *Johnson* v. *Ebberts*, 11 Fed. Rep. 129; 6 Sawyer, 538; Penal Code, § 718, subd. 3.) The learned judge upon the trial erred in deciding that probable cause is, under all circumstances, a question for the court to determine. (*Stewart* v. *Sennenbren*, 98 U. S. 187; 3 Abb. N. Dig. 170; *Fagan* v. *Knox*, 66 N. Y. 525; *Stewart* v. *Shelburn*, 5 Week. Dig. 122; *Neill* v. *Thorn*, 17 Hun, 144; *Collins* v. *Manning*, 1 N. Y. S. R. 193; *Grinnell* v. *Steward*, 32 Barb. 544; *Haupt* v. *Pohlmann*, 1 Robt. 121; *Whitfield* v. *Westbrook*, 40 Miss. 311.)

*Herman F. Koepke* for respondent. The facts justify the belief that the plaintiff was guilty of the offense charged. (Penal Code, § 640, sub. 3, § 654.) The defendant had probable cause for believing the plaintiff guilty, that is, " a reasonable suspicion, supported by circumstances sufficient to warrant a cautious man in the belief that a person accused is guilty of the offense charged. (*Heine* v. *Blair*, 62 N. Y. 25, 26; *Mohar* v. *Simmons*, 3 N. Y. S. R. 293; *Besson* v. *Southard*, 10 N. Y. 240; *Bulkley* v. *Ketteltas*, 6 id. 387; *Bingham* v. *Beckwith*, 19 Week. Dig. 422.) The burden of proving the lack of probable cause was on plaintiff. (*Thaule* v. *Krekeler*, 81 N. Y. 433; *Burns* v. *Erben*, 40 id. 465; *Marks* v. *Townsend*, 97 id. 597; *Dorendinger* v. *Tschechtelin*, 12 Daly, 34.) There was entire absence of malice, and unless malice is plainly inferable from the lack of probable cause, it must be shown affirmatively by the plaintiff. (*Thaule* v. *Krekeler*, 81 N. Y. 433; *Vanderbilt* v. *Mathis*, 5 Duer, 304; *McKown* v. *Hunter*, 30 N. Y. 625.)

POTTER, J. This is an appeal from the judgment of the General Term of the City Court of Brooklyn, affirming a judgment dismissing the complaint upon the trial of the action. The action was to recover damages for the malicious prosecu-

tion and arrest of plaintiff by the defendant. The arrest of the plaintiff was made under a warrant issued upon the application and affidavit of defendant made March 16, 1885, charging the plaintiff with having willfully and maliciously broken the water-closet in a stable on Vanderbilt avenue, between De Kalb and Willoughby avenues, in the city of Brooklyn. Upon the trial before the magistrate the plaintiff was acquitted.

The evidence introduced upon the trial of the charge before the magistrate was, with other evidence, introduced upon the trial of this action. Upon the whole evidence the trial court dismissed the complaint upon the ground that the defendant *had probable grounds to make the arrest and that the defendant acted as a reasonably prudent man* should have done under the circumstances.

It is manifest, from this holding by the trial court, that, in its judgment, the evidence fully justified the conduct of the defendant in making the complaint. Trials in actions of this character do not, ordinarily, need to proceed so far as was done in this case, as the burden is upon the plaintiff to show the want of probable cause and malice upon the part of the defendant, and unless the plaintiff's evidence establish the want of probable cause and malice, the defendant will be entitled to a dismissal of the complaint. (*Thaule* v. *Krekeler,* 81 N. Y. 428 ; *Marks* v. *Townsend,* 97 id. 590.) Another principle especially applicable to this class of cases is this, that where there is no dispute about the facts, the question of the existence of probable cause, or, as generally stated, the absence or want of probable cause, is a question for the court and not for the jury. (*Bulkeley* v. *Keteltas,* 6 N. Y. 384 ; *Heine* v. *Blair,* 62 id. 24, 25.)

The appellant insists upon this appeal that the trial court erred in deciding this question and in dismissing the complaint and in refusing to submit that question to the jury for decision. That brings us to the consideration of the evidence, and, in considering the evidence we are to observe, as a guide, another rule of law applicable to this class of cases, viz., "What

constitutes probable cause does not depend upon whether the offense has been committed in fact, nor whether the accused is guilty or innocent, but the prosecutor's belief based upon reasonable grounds." (4 Cush. 288; *Fagnan* v. *Knox*, 66 N. Y. 525, 528.)

In considering the evidence, for the purpose of determining whether there was probable cause or not, it would be, at least, liberal towards the appellant, and, perhaps, entirely decisive of the question, to have regard mainly, if not altogether, to the evidence of the plaintiff and his witnesses upon the trial of this case and upon the trial before the magistrate upon the criminal charge made by the defendant against him, which was also introduced upon the trial of this action.

The plaintiff was a plumber and was employed as such by the defendant, who was engaged in building or fitting up a stable in the city of Brooklyn, to do the plumbing for the same at an agreed price. The plaintiff had finished his job and surrendered the key of the stable to the defendant some two weeks before this difference arose between them. The defendant had paid plaintiff the whole of the agreed price except $65. Plaintiff had demanded the balance, but the defendant had refused to pay it on account of a crack in the stone sill done in plumbing the sewer, at least, until he could see the owner of the premises for whom the defendant with his partner, had undertaken to do the entire job. The conduct of the plaintiff for which the defendant had made the complaint, and the arrest therefor occurred on the morning of the 16th of March, 1885. *No complaint was made by defendant in respect to any part of the job of plumbing, and no words ever passed between the parties as to any defect or change in the work, in any respect, except as to the broken sill.* The plaintiff had procured an action to be commenced by summons, issued on the seventh day of March, against the defendant, to recover the $65 balance of the contract-price for plaintiff's plumbing, and returnable at eight o'clock A. M. on the sixteenth of March. Issue was joined in that action on the sixteenth, but not till after plaintiff was arrested and

brought before the magistrate for his alleged misconduct at an earlier period of the sixteenth. On the fourteenth of March, plaintiff had sent his servant to this stable. He went into the stable and commenced taking out the closet without the knowledge or consent of the defendant, and when the defendant was informed of his being there, he ordered him to leave, and he left, and the plaintiff was informed of it. This was on Saturday — the fourteenth Upon the following Monday morning, the plaintiff, with the same or another man in his employment, went to the stable without the knowledge or consent of the defendant. The door of the room containing the water-closet in the stable was locked, and the plaintiff procured a lock-smith with a pick to open this door, and then, in the absence of, and without the knowledge or permission of the defendant to be, or to do anything upon the premises, the plaintiff and his servant entered the room containing the water-closet and its setting or seat, and commenced to take down and remove the same.

At this stage of the plaintiff's proceeding the defendant was made aware of them and came to the stable and at once asked what right the plaintiff had to do what he was doing? The setting or box inclosing the closet and the attachments of the water-closet had been put in by direction of the defendant, and were completed. This evidence was substantially given by the plaintiff and his witnesses. I have forborne to refer to the evidence of defendant and his witnesses. I think it would have served to bring out more fully the transaction, but I desired to present it just as it appears from the testimony of plaintiff and his witnesses. The situation which confronted the defendant when he came upon the scene was this, that the plaintiff and his servant, after having been sent away and forbidden the Saturday night previous, had on the following Monday morning returned to the stable and procured a lock-smith to pick the lock upon the door of the room containing the water-closet, and, without the knowledge or permission of the defendant, were proceeding to remove the setting or box and the attachments of the same, and of the water-closet to the

room in which they had been placed. The plaintiff persisted in the work of removal in spite of the remonstrance and efforts of the defendant to prevent it.

Now, the offense charged in the complaint and affidavit of the defendant, and upon which the warrant of arrest was issued and the plaintiff was arrested is, "that plaintiff did willfully and maliciously break the water-closet in the stable," etc. This offense is defined and the punishment therefor prescribed in section 640, subdivision 3 of the Penal Code. It consists in the willful severance from the freehold of another anything attached thereto. And the term "willful" was defined in subdivision 1, section 718, as importing a purpose or willingness to commit the act to which it refers, and does not require any specific intent to violate law, to injure another or to acquire any advantage. "Maliciously" imports an evil intent or wish, or design to vex or annoy another person, or injure another person. (Subd. 4, § 718.) But it seems malice is not an element of the offense defined in section 640, subdivision 3 (*supra*), and the insertion of the word "maliciously" into the complaint was surplusage and unessential.

While I entirely concur with my brother HAIGHT that section 640, subdivision 3 of the Penal Code does not apply to a person who severs, with the consent of the owner, or who has a legal right to sever, it seems to me, with all deference to his views, that his reasoning from such a premise is not applicable to the undisputed facts in this case. While it is true that the definitions "willful" and "willfully," as contained in section 718, were left out by the amendment of that section by chapter 384 of the Laws of 1882, their omission does not change the meaning of those terms, but leaves the meaning to be ascertained and determined in the light of the decisions of the courts and the text writers upon that subject. The definitions as contained in section 718, Penal Code and left out by the amendment of 1882, especially as that definition was not changed in any respect, will, at least, be entitled to respectful consideration as expressive of the meaning given those words by the codifiers and the legislature.

Now, if we turn to 2 Revised Statutes (marg. p. 693, § 15, subd. 3) we find that this offense was defined in the same terms as in section 640, subdivision 3 of the Penal Code, which is said to be a re-enactment or substitute for that provision of 2 Revised Statutes (§ 15, subd. 3, m. p. 693).

The words "malicious" and "willful" as used in the provisions of the Revised Statutes (*supra*) and the Penal Code, have not the same or equivalent meaning; for the word "willful" is employed in some of the provisions defining misdemeanors, called "willful trespass;" the word "malicious" in defining others; and the word "unlawful" in defining still others. The language of the decisions of courts and text writers upon criminal law make a marked distinction in the meaning of · the words "willful" and "malicious" and that difference I think is in harmony with the definitions of those as given in section 718, Penal Code. Bishop, in his work upon Criminal Law, says: "A Massachusetts case decides that the word 'maliciously' in the statute against malicious mischief is not sufficiently defined as 'the willfully doing any act prohibited by and for which the defendant has no lawful excuse,' but its means *more*." (*Commonwealth* v. *Snelling*, 15 Pick. 337.)

The same author says: "The words 'willful' and 'malicious' cover together a broader meaning than the word 'willful' alone. (§ 429), 'Willfully' sometimes means little more than plain 'intentionally' or 'designedly.'" (§ 428.)

COLT, J. in *Commonwealth* v. *Williams* (110 Mass. 401), in discussing the difference in the meaning of "willful" and "malicious" says: "The injury must not only be willful, that is, *intentional and by design*, as distinguished from that which is thoughtless or accidental, but it must, in *addition* be *malicious* in the sense above given, that is, an act or injury done. either out of a spirit of wanton cruelty or black or diabolical revenge." Willfulness is implied in maliciousness, but maliciousness is not implied in willfulness. "To make 'willful' imply both a wrong and *malice* is to give to it a force and effect beyond what it will bear or what can be maintained,

either in common acceptance or its legal import." (*Commonwealth* v. *Kneeland*, 20 Pick. 245.)

It seems to me very clear that maliciousness is not an element in the offense defined in subdivision 3 of section 640, Penal Code. It only requires, to constitute that offense, that the act should be done willfully, that is, intentionally and with design.

Probable cause, which will justify a dismissal of the accusation is defined to be a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in his belief that the person accused is guilty of the offense with which he is charged. (*Foshay* v. *Ferguson*, 2 Denio, 617 ; *Carl* v. *Ayers*, 53 N. Y. 14–17.)

It seems to me, beyond question, that the evidence established not only that the defendant was within the protection of this rule, and, further, that the plaintiff was guilty of the charge. In other words, that the evidence upon the part of the plaintiff showed not the *want of the probable cause* required to maintain *this action*, but the existence of a *real* cause, sufficient, upon a trial for the offense, while unexplained, to convict the plaintiff of the offense with the commission of which the defendant had charged him before the magistrate, and sufficient to constitute a reasonable ground of suspicion, supported by circumstances, and sufficient to warrant a cautious man in the belief that the offense has been committed, etc.

This disposes of the main and the only question in the case which the appellant's counsel has seen fit to discuss in his able brief. There were one or two exceptions taken by plaintiff upon the trial which are not noticed by appellant's counsel, and which I think do not require to be noticed by this court.

I think the judgment should be affirmed, with costs.

HAIGHT, J. (dissenting). This action was brought to recover damages for an alleged malicious prosecution. It appears that on the 16th day of March, 1885, the plaintiff was arrested upon the complaint of the defendant charging him with having willfully and maliciously broken the water-closet in a stable on Vanderbilt avenue, in the city of Brooklyn; that a trial

was had before a Court of Special Sessions, held by FREDERICK S. MASSEY, Police Justice, and that the plaintiff was acquitted, after which this action was brought. After the testimony had been closed upon the trial herein, the defendant's counsel moved for a dismissal of the complaint, which was granted, and the plaintiff excepted.

The question to be determined upon this appeal is whether the plaintiff has established that there was a want of probable cause for such arrest.

It appears that one Cox was the owner of the premises in question; that the defendant is a carpenter and builder, and, in company with one Miller, had a contract from Cox to build a stable; that the defendant and Miller had entered into an agreement with the plaintiff, a plumber, to do the plumbing work in the barn for the sum of $190; that the plaintiff finished his work about the 1st of March, 1885, and was paid upon his contract the sum of $125, leaving a balance unpaid of $65; that he demanded this amount of the defendant, who refused to pay the same until the owner, Cox, should see the work and be satisfied with it; that thereupon the plaintiff procured Cox to come and examine the work, but Cox did not state whether he was satisfied with it, but told the plaintiff that he must look to the builder for his money; that the defendant was, subsequently, again requested to pay, and he stated that the stone forming the sill of the door had been cracked, through the carelessness of the plaintiff in putting in the sewer, and that he would not pay until the owner had returned from the south. No other objection to the work appears to have been made at that time. Thereafter an action was brought by the plaintiff against the defendant and one Miller, composing the firm of Miller & How, before a justice of the peace, to recover the balance due upon the contract. The defendants answered, denying their liability, upon the ground that the materials furnished were not according to the specifications, and that the work was not done according to the contract. The plaintiff had put in the barn a water-closet. The specifications under the contract called for "a Hand water-closet." The

one put in was a Hopper closet. On the Saturday before the arrest the plaintiff sent one Wedge, a plumber in his employ, to change the closets and put in the kind called for by the specifications. Wedge went to the barn and had the closet partially taken out when the defendant came in and "asked him what he wanted. He said he wanted to change the water-closet." The defendant then turned him out of the barn and refused to allow him to proceed with the work. On the next Monday morning the plaintiff, with another plumber, went to the barn for the purpose of completing the change of closets. They took with them a new closet such as was called for by the specifications and laid it upon the floor. The door of the closet being locked the plaintiff procured a locksmith to come and unlock it. He then took out the closet that was in, at which time the defendant appeared with a policeman and three or four other men. The plaintiff testified that the defendant asked what right he had to do that, and that he answered that he was making the change necessary. Thereupon the defendant picked up the new closet that was lying upon the floor and threw it out. As he did so the plaintiff rushed to catch the closet and the defendant called upon the policeman to arrest him, which he did, and took him to the station-house and from thence to the Police Court.

There is some conflict in the evidence as to what took place at the time the arrest was made. Our statement of it is in substance that given by the plaintiff and his witnesses. The defendant, however, concedes in his testimony that he saw the new closet pan there and that he undertook to carry it out of the barn. He would not admit that he knew what it was there for, and yet, we think, he did understand its purpose and what the plaintiff was attempting to do, and that this is apparent from the following quotations from his testimony: " Q. Now, when you went there you saw two water-closet pans, did you not? A. I did; I knew certainly; I knew there was only one there before. Q. Well, you stooped to take one of them and threw it out, did you not? A. I stooped

to carry it out. Q. Well, it was the one that had not been there before, was it not? A. Yes. Q. Did you know who brought it there? A. I did not. Q. Did you have any idea who brought it there? A. What my ideas are is not the question, it is what I know. Q. Just answer the question; did you have any idea who brought it there? A. You might have brought it there for all I know. Q. That is not what I asked you; did you have any idea who brought it there? (By the Court): Who did you suppose brought it there that morning? A. Why, anybody might have brought it there. (By the Court): You supposed anybody brought it there? A. Why, certainly. Q. Who did you think brought it there? A. My inference would be that Anderson brought it there, but I did not know that he did. Q. Did you form some idea about what that was doing there or who brought it there when you stooped down to carry it out? A. I certainly knew that the water-closet had no business there. * * * Q. What did you suppose the plaintiff brought it there for? A. That is his business and not mine; I don't know what he brought it there for. Q. Did you have any idea on that subject at all? Witness: Well, I appeal to the court if I am to answer what my ideas are. (Court): Yes, certainly. Q. Did you have any idea what he brought it there for? A. He might have had a great many purposes. (By the Court): What was your idea that he brought it there for? A. At the morning call I had no idea in the excitement; I did not stop to ask what he wanted to do with it."

It consequently appears to us that the plaintiff was there upon the premises making a change of the water-closets so that they would conform to the specifications attached to his contract, and that the defendant knew from what had been told him by the plumber Wedge on the Saturday before, and what he saw and heard on the morning in question, that such was the plaintiff's purpose and intent.

Was there, therefore, probable cause which would justify the arrest? The trial court appears to have reached its conclusion upon a strict construction of the Code, for in dismiss-

ing the complaint the court says: " I think this constitutes an offense within the meaning of the section of the Code which has been called to my attention. *If it had not been for that section I should have held the other way.*" The section referred to provides as follows: A person who willfully severs from the freehold of another, or of the people of the state, any produce thereof, or anything attached thereto, is punishable by imprisonment not exceeding six months or a fine not exceeding two hundred and fifty dollars, or both. (Penal Code, § 640, subd. 3.)

This provision is not, however, to be construed to include persons who intentionally sever from the freehold, with the knowledge and consent of the owner, or those who sever under a legal right. It was designed to meet the cases where a person willfully and maliciously severs from the freehold without right, for the purpose and with the intent to injure or destroy the property. In order, therefore, to convict the plaintiff under this section, it was necessary to show that he took out the closet that was in there without right so to do, and for the purpose of injuring or destroying the premises. His work had not been accepted by the owner or by the defendant, the contractor. He had the right to enter the premises in a peaceable manner and make his work conform to that required by the contract; and if this was his purpose and intent, and it was so understood by the defendant, there was no probable cause existing which justified his arrest. Payment of the balance under the contract had been refused. A suit had been commenced to recover such balance. In order to recover, it was important for the plaintiff to show that he had performed his work in accordance with the requirements of the contract. The plaintiff had the right to correct his work so that he could make good his claim and establish his right to recover in another action if not in the one pending. The defendant sought to defeat him in the action pending, as is apparent from the answer interposed, in which it was charged, as we have seen, that the materials furnished were not according to the specifications and that the

work was not done according to the contract. There was a reason, therefore, why the defendant did not wish the closets changed while that action was pending. The plaintiff did not prosecute that action further, but allowed it to go down by not appearing on the adjourned day. Thereafter the defendant consented that the plaintiff might exchange the closets, which was done.

We are, therefore, of the opinion that a question was presented which should have been submitted to the jury, and that the court erred in granting the motion to dismiss the complaint, and by refusing the plaintiff's request to go to the jury upon the question of probable cause and malice.

The judgment should be reversed and a new trial granted, with costs to abide the event.

BRADLEY, J. (dissenting). The defendant was permitted to act on appearances, and if they were such as to furnish reasonable grounds of suspicion, supported by circumstances to warrant the belief of a cautiously prudent man that the plaintiff was guilty of the offense charged, he was justified in causing his arrest, although the plaintiff was innocent of the charge. The question whether or not there was any evidence tending to support the allegation of want of probable cause was for the court; and, if there was not, the complaint was properly dismissed, but if there was any evidence or inference derivable from it, which would justify the conclusion of want of probable cause, the question was one of fact for the jury. (*Masten* v. *Deyo*, 2 Wend. 424; *Foshay* v. *Ferguson*, 2 Denio, 617; *Bulkeley* v. *Keteltas*, 6 N. Y. 384; *Besson* v. *Southard*, 10 id. 236; *Carl* v. *Ayers*, 53 id. 14; *Heyne* v. *Blair*, 62 id. 19; *Fagnan* v. *Knox*, 66 id. 525.)

The offense with which the plaintiff was charged was within the statute which provides that " a person who willfully severs from the freehold of another, or of the people of the state, any produce thereof, or anything attached thereto, is punishable," etc. (Penal Code, § 640, subd. 3.) The term " willfully " is not defined by the statute. The definition given to it by section 718 in the original act (Laws 1881, chap. 676) was

eliminated by amendment in 1882. Its meaning is not an arbitrary one, applicable alike in all its relations, but its import is dependent somewhat upon its connection, by which the purpose of its use is to be ascertained. This provision of the Penal Code was intended to take the place of that of the prior statute, which was that every person who should willfully commit any trespass by "maliciously severing from the freehold any produce thereof, or anything attached thereto" should be guilty of a misdemeanor, etc. (2 R. S. 693, § 15.) The Code, as amended, I think, was not intended to materially modify that provision of the Revised Statutes. The word "willfully" is common in criminal law, and there its import is extended beyond the plain meaning of intentionally or designedly, and embraces within it a certain degree of malice or purpose to do injury. And thus is involved in the statutory offense the element of criminal intent. (*Kilpatrick* v. *People*, 5 Denio, 278, 281; *Wait* v. *Green*, 5 Park. 185; *Commonwealth* v. *Williams*, 110 Mass. 401; *Commonwealth* v. *Kneeland*, 20 Pick. 206 ;.1 Bishop's Crim. Law, § 421 [262]).

The conclusion was, therefore, warranted that the plaintiff was guilty of no crime in what he did, but that he was acting in good faith to make the work, which he had undertaken to perform, conform to the requirement of his contract. It is true that he previously assumed to have completed his contract, but, since the closet was not such as by the specifications he had agreed to put in, he had entered upon the premises, and was seeking to make the change in that respect, when he was arrested by the direction of the defendant.

The plaintiff's relation to the transaction was different than it would have been if he had not had the contract to do the plumbing. It was essential to his claim for service that he perform the work substantially as he had agreed to do it. And the fact that he had before announced its completion, did not deny to him the right to seek the opportunity to correct any error he had made in the work, if it could be done without prejudice to the other party or owner of the property. The fact, however, that he had entered by forcible means to

do it was a circumstance, unexplained, which enabled the defendant to believe that he was unlawfully there engaged in a criminal trespass within the statute. But the question is, whether a reasonably prudent or cautious man, under the circumstances, would have observed or been advised of the actual purpose of the work the plaintiff was engaged in at the time in question, or whether there was any evidence in support of that fact. For if the defendant was, at the time, advised that the plaintiff was not engaged in a criminal act, although there were appearances indicating it, he was not justified in causing the arrest and prosecution of the plaintiff. (*Fagnan* v. *Knox*, 66 N. Y. 525.)

And if, from what he observed and learned upon the occasion, he was not justified in entertaining the honest belief that the plaintiff was committing any crime, his prosecution was without probable cause. (2 Greenl. on Ev. § 455 ; *Shafer* v. *Loucks*, 58 Barb. 426, and cases there cited ; *Merriam* v. *Mitchell*, 13 Me. 439 ; 29 Am. Dec. 514; *Grinnell* v. *Stewart*, 32 Barb. 544.)

I am inclined to think there was evidence sufficient to require the submission of that question to the jury. The defendant was a party to the contract with the plaintiff. And when he went to the stable on that occasion, and before the arrest of the plaintiff, his attention was called to the closet apparatus, which the plaintiff designed to substitute for the one before put in. The inference was permitted, from all that may have been or was seen and what occurred, that the defendant was advised of or understood the purpose for which the plaintiff had it there, and the use he was proceeding to make of it in the work: And that, instead of willfully severing anything from the freehold, he was proceeding to change the apparatus referred to. The facts are so fully referred to in the opinions of Judges POTTER and HAIGHT that it is unnecessary to make any further reference to them here.

I think a new trial should be granted.

FOLLETT, Ch. J., VANN and PARKER, JJ., concur with POTTER, J.; HAIGHT, BROWN and BRADLEY, JJ., dissenting.

Judgment affirmed.