# THE

# New York Supplement

## VOLUME 36.

(14 Misc. Rep. 554.)

### THORP v. CARVALHO.

(Common Pleas of New York City and County, General Term. December 2, 1895.)

1. ACTION—JOINDER—FALSE IMPRISONMENT AND MALICIOUS PROSECUTION.
    Under Code Civ. Proc. § 484, subd. 2, providing that plaintiff may unite in the same complaint two or more causes of action for personal injuries, causes of action for false imprisonment and malicious prosecution may be joined.

2. MALICIOUS PROSECUTION—WANT OF MALICE—PROBABLE CAUSE.
    In an action for malicious prosecution, it appeared that plaintiff was requested to take an order to defendant's office; that he presented the order to the cashier, explaining his possession and instructions; that the cashier said he would have to show it to defendant; that plaintiff repeated his explanation to defendant, who could have verified it by telephone; that defendant sent one L. for an officer, charged plaintiff with being in possession of a forged order, and told L. to go with plaintiff and the officer to the police station; that L. repeated the charge at the station, and plaintiff was locked up. *Held*, that the questions of malice and probable cause were for the jury.

3. EVIDENCE—COMPETENCY—RES GESTAE.
    In such action, evidence of what plaintiff said to the cashier is competent as part of the res gestæ, to show how defendant was brought into the matter.

4. SAME—INJURY TO REPUTATION—DAMAGES.
    In an action for false imprisonment and malicious prosecution, a verdict for $1,000 is not excessive, though plaintiff was imprisoned but an hour and a half.

5. TRIAL—INSTRUCTIONS—SUBSTANTIALLY GIVEN.
    Where the charge given by the court contains in substance requests to charge submitted by a party, it is not error to refuse such requests.

Appeal from trial term.

Action by Charles L. Thorp against Solomon S. Carvalho for false imprisonment and malicious prosecution. From a judgment entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before DALY, C. J., and BOOKSTAVER and BISCHOFF, JJ.

Bowers & Sands (John M. Bowers and Charles N. Harris, of counsel), for appellant.

J. Noble Hayes, for respondent.

BOOKSTAVER, J.    The plaintiff, an agent, had desk room in the office of Post & Davidson, dealers in horses.    On the morning of the arrest Mr. Davidson asked him if he was going down town, and on his replying that he was, requested him to call at the World office and get an order cashed.    It seems that a stranger had called upon Mr. Davidson that morning and had bought a horse, giving the following order in payment, written by him on Post & Davidson's letter head:

"New York, June 19th, 1893.

"C. B. Shaw, World Bldg.: Pay bearer, for cob, bought by order of Mr. Carvalho from above party, two hundred and seventy-five, $275.

"Yours,                                Geo. G. Pulitzer."

Mr. Davidson gave the plaintiff an envelope, containing this order, a bill of sale, and Post & Davidson's business card.    The plaintiff handed this envelope, with its contents, to the cashier at the World Building, who said:    "I will have to show this to Mr. Carvalho. Won't you come in and have a seat?"    Plaintiff went into the cashier's office, and waited 10 or 15 minutes, Mr. Carvalho being engaged conversing with other parties.    Presently he turned to the plaintiff. Plaintiff gave him his visiting card, and said that Mr. Davidson gave him the papers, and had requested him to call and collect the money at the World office, telling him that he had sold a horse, and that was an order on the World people for the money for it; that Mr. Davidson had given him a bill, and asked him to receipt it if the money was paid, and to ask the use of their telephone to notify him that the order was all right, so that he could deliver the horse.    Mr. Carvalho, the defendant, went out for a few minutes and returned with a Mr. George C. Ledlie.    Mr. Carvalho said:    "You know you are in possession of a forged paper?"    Plaintiff answered that he did not know anything about it; that Mr. Davidson had given him the order, and asked him to call with it.    Plaintiff had previously asked the cashier if he might use the telephone, if the order was all right. On being told that he was in possession of a forged paper, plaintiff was very much excited, and does not recall the exact words he used. He explained his instructions, and that he was simply Mr. Davidson's agent.    Defendant said to plaintiff:    "You will have to go with Mr. Ledlie.    He will go around with you;" and said to Mr. Ledlie:    "You go around to the station house.    He will go around to the station with you."    The door was then opened and an officer touched plaintiff on the shoulder and said:    "You come with me."    The defendant had previously sent Mr. Ledlie to the station house to state the circumstances to the sergeant, to get an officer, and ask that the case be investigated.    Plaintiff and Ledlie walked around to the station house, the officer following 10 or 15 feet behind.    They testify that they stopped outside, and the officer went into the station house alone, returning and asking them to step inside.    The officer and sergeant testify that they all three went in together, and that the

officer did not first go in alone.　Mr. Ledlie made the charge that the plaintiff was found with a forged order in his possession, and the sergeant thereupon had him locked up.　He sent for Davidson and a Mr. Butler, his brother-in-law, and on their arrival, the plaintiff having been locked up about an hour and a half, they were all sent around to the Tombs police court with an officer.　Mr. Ledlie made the same statement to the justice that he had made at the station. The plaintiff was then discharged, on Mr. Butler's promising to be responsible for his appearance in court the next morning.　He attended at court the next day, and was finally discharged.

The police officer testified that he went around to the World Building with Mr. Ledlie, that the defendant told him that the plaintiff had a forged order, and thereupon he arrested him.　The police sergeant testified that Mr. Ledlie, when he first went to the station house, showed him the order, and said it was a forgery.　He wanted to have an officer sent around, and asked him to have the matter investigated.　He then sent an officer to bring the plaintiff to the station house.　Mr. Butler testified that Mr. Ledlie told him in so many words that he represented Mr. Carvalho.　The defendant denied having told the officer to arrest the plaintiff, or that he had told the plaintiff that he would have to go around to the station house.　Both the defendant and Mr. Ledlie testified to the effect that the defendant told the officer to go up to the stable, and the plaintiff would point out the man who gave the order.　Mr. Ledlie says that they started for the elevated station, and the policeman said he would have to go around to the station to tell the sergeant where they had gone.　They went with him, were invited inside, and the plaintiff was locked up.　The defendant denied that the plaintiff said anything about telephoning to Mr. Davidson.　This was the case as presented by both sides.

The appellant's first contention is that the court erred in denying his motion to compel the plaintiff to elect between the two causes of action, false imprisonment and malicious prosecution.　While the earlier cases seem to hold that these two causes of action are essentially distinct, and cannot be united in the same complaint, this rule appears to have been changed.　Code Civ. Proc. § 484, subsec. 2; [1] Marks v. Townsend, 97 N. Y. 594; Cunningham v. Light Co. (Super. N. Y.) 17 N. Y. Supp. 372; Neil v. Thorn, 88 N. Y. 270, 14 Am. & Eng. Enc. Law, p. 16.

In order that a plaintiff may maintain an action for malicious prosecution, three things must be shown:　Malice, want of probable cause, and the termination of the prosecution.　Malice may be actual, or a mere wanton or careless disregard for the rights of others, or the doing of the act complained of without that ordinary prudence and discretion which persons of sufficient age and sound mind are presumed to have.　14 Am. & Eng. Enc. Law, p. 23.　Probable cause is the existence of such facts and circumstances as would

---

[1] Code Civ. Proc. § 484, subsec. 2, provides that plaintiff may unite in the same complaint two or more causes of action to recover for personal injuries, except libel, slander, criminal conversation, or seduction.

excite the belief in a reasonable mind, acting on the facts within the knowledge of the prosecutor, that the person charged was guilty of the crime for which he was prosecuted. Id. p. 24.

False imprisonment is the unlawful restraint of a person contrary to his will, either with or without process of law. 7 Am. & Eng. Enc. Law, p. 661. Two things are requisite: Detention of the person and the unlawfulness of such detention. Malice need not be shown, and is immaterial, except as it may affect the question of damages. Id. pp. 662, 663. But in such case, as in the case of malicious prosecution, it is necessary to show want of probable cause. Where there is no dispute as to the facts, the question of the existence of probable cause, or the absence or want of probable cause, is for the court. Anderson v. How, 116 N. Y. 336–338, 22 N. E. 695. The question is whether the prosecutor's belief was based upon reasonable grounds. Id.

The defendant denies that he ordered the plaintiff's arrest. The circumstances testified to by the plaintiff and police officers tend to establish the fact that he was responsible therefor. Did the circumstances justify the arrest? The plaintiff made no effort to escape. He explained how he became by the order, and that he was sent to ascertain if it was good, as Davidson would not deliver the horse until he received the money on it. The defendant could have telephoned to Davidson and verified the plaintiff's story, or he could have sent the parties up to the stable. His case rests upon the contention that he did not direct the arrest, nor authorize Mr. Ledlie to make the complaint. He, by inference, admits that the arrest was unjustified. We think, upon this disputed state of facts, the questions of malice and want of probable cause were therefore properly left to the jury, and the justice did not err in denying the motions to dismiss at the close of the plaintiff's case, and when the whole testimony was in, or to direct a verdict for the defendant. The verdict is sufficiently sustained by evidence which the jury were justified in believing, and we cannot say that it was against the weight of the evidence.

We do not think that the verdict of $1,000 was excessive. While plaintiff was only locked up an hour and a half, or thereabouts, in arriving at the amount of damage he has suffered, we must consider the injury to his reputation, besides any actual injury he has sustained. It is difficult to measure the damage suffered by any one in his business and private reputation; but, under the circumstances of this case, we do not think that the verdict should be set aside as excessive, or that the jury were influenced by prejudice in awarding the amount they did. The evidence of what the plaintiff said to the cashier, when he presented the order, was competent, as part of the res gestæ, as it tended to show how the defendant was brought into the matter. In any event, the evidence being merely that plaintiff presented the order and explained how he came by it, and that then the cashier asked him to step inside, could have had no influence with the jury, inasmuch as the plaintiff made the same explanation to the defendant in person. What took place at the station house and police court, in the presence of Mr. Ledlie, was competent. Mr.

Ledlie was acting under defendant's directions, and the jury could find, from the evidence, that his acts were the defendant's acts. The justice had charged, in substance, the requests which were submitted by the defendant, to the refusal to charge which he excepted; and this refusal was, therefore, not error. The charge, as made, was comprehensive of both the law and the facts. No exception was taken to any part of it, and we think the verdict of the jury is conclusive.

Judgment and order affirmed, with costs. All concur.