### KUTNER v. FARGO.

(Supreme Court, Appellate Division, First Department. November 11, 1898.)

1. RECORD ON APPEAL—CONCLUSIVENESS.

On a controversy whether an order, after term, setting aside a verdict and granting a new trial, was made after the making of a final order, at term, refusing a new trial, and therefore was without jurisdiction, a recital in the record, on appeal of the last-made order, that the court had

entertained the preceding motion and had reserved its decision, is conclusive.

**2. MALICIOUS PROSECUTION—BURDEN OF PROOF.**

In an action for malicious prosecution, the burden is on plaintiff to show want of probable cause, where he knows the facts on which defendant acted.

**3. SAME—WANT OF PROBABLE CAUSE—EVIDENCE.**

Plaintiff in malicious prosecution had been arrested for larceny, on affidavits of fellow employés. On the trial he had denied the offense and the acts testified to by the witnesses, and was acquitted. He introduced the indictment and the said affidavits, and also the magistrate's commitment. The latter recited that from the depositions it appeared a crime had been committed, and that there was sufficient cause to believe the defendant guilty. *Held* not to establish a want of probable cause for the arrest.

**4. SAME—PROBABLE CAUSE—EVIDENCE.**

Valuable packages had been stolen from a room where accused (an express clerk) and others worked. Two employés were put to watch. They observed accused take, from the bin containing waybilled packages, several packages, and put them in a basket for forwarding. He retained one package, and took it to his desk, and there, catching the eye of a watcher, brushed the package to the floor. While he temporarily left the room, the address of the package was noted, and it was replaced on the floor. On his return, accused moved the package around to the front of the desk, and then placed the package in one of the drawers, and, on leaving in the evening, carried away a package (said to be a hat which he purchased during his said absence from the room), within which was seen the impression of a package similar to the one he had dropped on the floor. There was in fact no record that such package had ever been waybilled, and it was not seen again. Accused had taken some paper and wrapped up something at his desk in the evening, before leaving. *Held* to show probable cause for prosecuting him for larceny.

Appeal from trial term, New York county.

Action by Harry H. Kutner against James C. Fargo, as president of the American Express Company. From an order setting aside a verdict and granting a new trial (45 N. Y. Supp. 753), plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

Leo G. Rosenblatt, for appellant.
Lewis Cass Ledyard, for respondent.

BARRETT, J.   This is an action for malicious prosecution. The defendant is the president of a voluntary unincorporated association organized under the statute with regard to associations consisting of seven or more persons. The plaintiff had a verdict for substantial damages, which the learned trial judge set aside. The motion to set aside the verdict and for a new trial was made upon the trial judge's minutes. The plaintiff, in appealing from the order, contends that the motion for a new trial was definitely passed upon, adversely to the defendant, at the trial, and consequently that the trial judge was without jurisdiction to grant, as he did, a further hearing upon the motion after the close of the term. The defendant, upon the other hand, contends that the motion for a new trial was not finally passed upon at the trial. There seems to have been a dispute below as to what actually transpired upon the rendition of the verdict. The

plaintiff insisted that the trial judge denied the defendant's motion for a new trial, reserving leave only to move to dismiss the complaint. The defendant insisted that leave generally to renew the motion for a new trial was reserved. The dispute was solved in the defendant's favor by the learned trial judge, and the record, as made up on this appeal, sustains him. The record contains the following direction made at the close of the trial:

"The Court: I will let the motions to set aside the verdict and for a new trial, and the motion to dismiss, stand undetermined, and change my ruling accordingly; and, when you present your case, I will consider them. I think I will deny them again. I will let the motions stand as made, and withhold decision in respect to the matter."

It is true that this conflicts with the affidavit of a clerk in the office of the plaintiff's attorneys, who gives an excerpt from the stenographer's minutes, in which this direction does not appear. We must, however, abide by the record, especially as the learned trial judge, from his own recollection, states that the stenographer's minutes were incomplete in the particular mentioned. The following recital in the order appealed from is also quite conclusive:

"And the court having decided that it had entertained the motion to set aside the verdict and for a new trial at the trial, and had withheld its decision thereon until further argument after the minutes had been procured."

This brings us to the merits of the appeal. The defendant's motion was granted because of "substantial error at the trial." It will not be necessary to consider the particular assignments of error contained in the memorandum filed by the learned trial judge. We think the motion was properly granted, for reasons of a far more radical character than those discussed in his opinion. In our judgment, the complaint should have been dismissed when the plaintiff rested, and upon the close of the case a verdict for the defendant should have been directed. The burden was upon the plaintiff to prove a want of probable cause. He entirely failed to do so. He contented himself with testifying to his arrest upon the charge of stealing a package addressed to one McAllister, at White Plains, and asserting his innocence in the premises. He denied having seen or handled the package in question. He testified, too, that prior to his arrest no one had asked him to explain anything connected with the suspected larceny; that, upon the occasion when the defendant claimed that the larceny was consummated, he was permitted to leave the package room without interrogation; and that upon his arrest he declared his innocence, which thereafter he constantly asserted, in the face of persistent efforts to induce him to confess guilt. The rule, however, is that the plaintiff in this class of actions must prove something more than his innocence. He is bound affirmatively to show a want of probable cause. There may doubtless be cases where the plaintiff knows nothing of the facts and circumstances upon which the arrest was procured. There may even be cases where he can ascertain nothing upon that head, and where the bald fact of his arrest, coupled with the circumstances attending it, may suffice, prima facie, to show a want of probable cause. But that is not this case. The facts and circumstances upon which the defendant here acted were well known, and

entirely accessible to the plaintiff. He was arrested upon the affi-davits of an agent and clerk of the company. He was then taken before a police magistrate and committed, having waived an examina-tion. Subsequently he was indicted, tried, and acquitted. He put in evidence the indictment and accompanying papers. The latter con-tained the affidavits made by the defendant's agent and clerk before the police justice; also, that magistrate's commitment, in which he recited that it appeared to him, by the depositions, that the crime had been committed, and that there was sufficient cause to believe the defendant guilty. These proofs certainly showed no want of prob-able cause. They tended rather to show probable cause,—at least, prima facie. Then, too, the plaintiff was cognizant of the evidence which was presented against him upon the trial of the indictment. It is, indeed, apparent that throughout he was aware of every fact and circumstance upon which the defendant had proceeded. In pla-cing his case before the court and jury, these facts and circumstances were entirely ignored, and were left to be put in by the defendant. Thus, the plaintiff sought to shift the burden which the law cast upon him. Had the defendant failed to take it up, or to put in any evidence upon the subject, it would have been impossible to say wheth-er the company had or had not probable cause for the accusation; and the jury, with light upon the subject at hand, and entirely at the plaintiff's command, would have been left wholly in the dark. The defendant, however, upon the denial of his motion to dismiss, placed before the court and jury all the evidence upon which the company acted; and we feel bound to say that a clear case of probable cause was thereby made out. This evidence was undisputed,—we mean, with respect to its presentation to the defendant in good faith, and without malice. The plaintiff, as we have seen, denied the handling of the package, and denied, also, the suspicious circumstances testified to by the defendant's witnesses. But the conflict at this point did not present a material question of fact for the jury. Whether the company here had probable cause, or not, depended upon the informa-tion which it had at the time the charge was made. Foshay v. Fergu-son, 2 Denio, 617; Miller v. Milligan, 48 Barb. 30; Delegal v. Highley, 3 Bing. N. C. 950; Seibert v. Price, 5 Watts & S. 438. There was no conflict as to the information which was actually furnished to the de-fendant. The informants reported to the general superintendent and manager of the company what they had observed. They were fellow employés of the plaintiff, uninfluenced by unkind feeling,—much less, malice. They intended to, and, so far as they were aware, did, report what they saw, accurately, and there was nothing whatever in any of their reports to suggest the slightest doubt of its truth or fairness. The higher officials of the company themselves acted upon these reports, not only in perfect good faith, but with extreme caution. The question then is, were the facts thus brought to the defendant's atten-tion (facts to which the informants were prepared to and did testify, facts of the truth of which the defendant had every reasonable assur-ance) sufficiently strong in themselves to warrant a cautious man in his belief that the person accused was guilty of the offense charged? Carl v. Ayers, 53 N. Y. 17; Fagnan v. Knox, 66 N. Y. 528; Anderson

v. How, 116 N. Y. 343, 22 N. E. 695. The facts thus presented being
undisputed, the question is one of law. These facts do not admit of
two inferences. They were either sufficient to constitute probable
cause, or insufficient. Without reflecting upon the plaintiff in the
slightest degree, and without questioning the justice of the verdict of
acquittal, we cannot doubt that the appearances were greatly against
him, and that the circumstances were such as to furnish any discreet
and prudent man with reasonable grounds for the accusation.

The material facts were substantially these: The plaintiff was a
waybill clerk in the package room of the express company, at Forty-
Eighth street, in this city. He was a man of excellent reputation,
and the defendant had no cause to complain of or oppress him. A
number of valuable packages had disappeared in the room where
he was employed, and the defendant's local agent, Mr. Sherman,
determined, if possible, to find the guilty person. He accordingly
instructed two trusted employés of the defendant to watch what
was going on, and report to him. Upon the afternoon of July 12,
1892, a clerk named Kinsley reported to Mr. Sherman that he had
seen the plaintiff handling a package addressed to R. McAllister,
White Plains; that the plaintiff had gone to a bin on the side of
the office, where only waybilled packages belonged, and had taken
certain packages from the bin, and thrown them into a wheel basket
used for taking packages to the train for forwarding; that while
doing this he retained in his hand one package, which he carried to
his desk; that another employé (Enright) also saw this; that, after
the plaintiff had gone to his desk with this package, he looked up
and caught Kinsley's eye; that he then turned away and brushed
the package off his desk, to the floor, and shortly thereafter left
the room; that Enright then went to the plaintiff's desk, picked up
the package, brought it over to Kinsley, made a note of the ad-
dress, and then took it back and replaced it upon the floor. That
evening Enright reported the sequel to Sherman. He had seen the
plaintiff, upon his return to the package room, move the package
round in front of his desk, pick it up, and drop it in one of the
drawers. Later, Enright reported that the plaintiff, in leaving the
place for the day, carried away a package of his own (said to be
a straw hat which he had purchased in the interim between his
leaving the room and his return), inside of which Enright had ob-
served the impression of another package, corresponding in shape
and size with the McAllister package. It further appeared that
the McAllister package never reached its destination. There was
in fact no record of its having been waybilled, and it has never been
seen since it was dropped, according to these witnesses, into the
drawer of the plaintiff's desk. There was also a later report from
another employé of the company that on the evening of the same day
the plaintiff obtained from him some tissue paper, and then went
to his desk, and, kneeling down in front of it, wrapped something up
there. There were also suspicious circumstances with regard to
other packages,—occurring both before and after the disappearance
of the McAllister package,—which need not be detailed. The arrest
was for the larceny of the McAllister package. Before the arrest

the defendant placed the whole matter in the hands of the police, and finally the facts were laid before a police justice, who advised the warrant. Upon the plaintiff's arrest he accounted for money and property found in his possession in part by the statement that he had lately won money betting upon horse races. It is clear that the facts, in their entirety, as presented to the defendant, were amply sufficient to justify the company's managers in acting as they did. They did not, as the plaintiff claims, so act upon mere guess or conjecture, but upon actual and substantial facts, of which they were credibly informed, pointing to the plaintiff's guilt. The delay which ensued between the information of these facts and circumstances and the arrest is fully accounted for. It resulted not, as claimed, from doubt, but caution, and also from the tardiness of the police agents.

The point is made that if the defendant knew, or ought to have known, or could with reasonable diligence and caution have ascertained, facts exculpating the plaintiff, he cannot successfully urge that there was probable cause. Assuming the correctness of this proposition precisely as put, the answer is that there were no such facts. The plaintiff has never suggested the existence of any exculpatory fact. He has relied upon his denials. The defendant was certainly not bound to inform him of the company's suspicions, and give him an opportunity to escape. Had the company done so, the plaintiff, upon his own showing, could simply have given its informants the lie. There were other clerks, it is true, in the package room, besides those who reported upon the plaintiff's acts. But the defendant could have had no reason to believe that these other clerks had observed any of the facts in question. The persons who had observed these facts were specially assigned to the duty of observation. But for that, they too would probably have remained unobservant, and the disappearances of property might have proceeded indefinitely. Nor was there need of special cross-examination of the reporting witnesses. Each one told the defendant's officials his story fairly and squarely, and told it without color or suspicious manner. There was no actual malice,—no motive whatever for ruining the plaintiff's reputation. All parties performed a duty which they owed to the company, and the plaintiff was simply the victim of unfortunate circumstances, which he has repudiated, but has never attempted to explain.

We think, therefore, that the order appealed from was right, and should be affirmed, with costs. All concur.