### THE GULF, COLORADO & SANTA FE RY. CO. v. W. W. JAMES

### No. 2543.

1.   **Verdict.**—Though a verdict may not be in its form strictly in accordance with the court's charge, yet if its meaning is manifest by reference to the entire record it will not be set aside for informality.

2.   **Pleading—New Trial.**—The effect of an order granting a new trial on the motion of one only of several parties who are jointly and severally sued is to vacate the judgment formerly rendered as to all the defendants.

3.   **Verdict.**—In actions of tort based on the malicious character of the act complained of, when the suit is against several parties, a verdict returned in favor of the plaintiff against one defendant, and which is silent as to his codefendants, will not for that cause alone be set aside.

4.   **Malicious Prosecution—Probable Cause.**—In a suit for malicious prosecution the court should not in the charge on the question of probable cause review the evidence which if true would establish a want of probable cause and so say to the jury, or state evidence which if true would establish probable cause and then instruct the jury that if they believed it then probable cause existed.    The question of probable cause must be decided by the jury, and such a charge should be given as to enable the jury to draw correct conclusions from the facts as they find them.

5.   **Malicious Prosecution—Principal and Agent.**—In a suit against a railway company for maliciously prosecuting the plaintiff through its general business manager for perjury, *held*, that the prosecution having been for the offense of perjury alleged to have been committed by the accused in a suit involving the liability of the railway company, and the prosecutor being shown to have had the entire control of the business interests of the company, and of litigation affecting its interests, was responsible in damages for the malicious prosecution of the plaintiff.

6.   **Probable Cause.**—In a suit for malicious prosecution probable cause is not conclusively established by proof that the defendant acted under the advice of counsel. Such proof can be considered as a circumstance showing both the want of malice and as supporting the defense of probable cause.    It does not necessarily establish the existence of the latter or the absence of the former.

APPEAL from Galveston.    Tried below before Hon. W. H. Stewart. The opinion sufficiently states the case.

*R. S. Walker*, *M. C. McLemore*, and *J. W. Terry*, for appellant.—1. The verdict of the jury is not responsive to the charge of the court in

this, that the court charged the jury, "If your verdict be against some of the defendants, but not against all, then specify in the verdict which defendant or defendants you find damages against, and the amount and kind of damages, and which of the defendants you find in favor of." Whereas the verdict of the jury as rendered is only against the Gulf, Colorado & Santa Fe Railway Company, one of the defendants, and no verdict was rendered either in favor of or against either of the other two defendants; by force of which verdict the controversy between defendants Webster Snyder and James Spillane and the plaintiff, against the direction of the court in its charge to the jury, was left undetermined, wherefore the verdict is against the law and the charge of the court. Nor could judgment be entered on such verdict disposing of all the parties to the controversy. The court erred in entering judgment against appellant and in favor of the two codefendants, because the verdict does not warrant the judgment. Levy v. McDowell, 45 Texas, 220; Aken v. Jefferson, 65 Texas, 137.

2. The verdict of the jury is in total disregard of the charge of the court in this, that the jury were charged by the court that "Where the agents and employes of a corporate company do acts for and in behalf of the company, and within the scope and purview of their powers, or are ratified by the company, and such acts are willfully and purposely done with malice and without probable cause, the company and their said agents and employes so acting are all each jointly and severally liable for the damages which such acts cause to the injured party;" whereas by the verdict of the jury the corporation alone was punished on the grounds of the wrongs done through their agents and codefendants, and while said agents and employes by the verdict were held guiltless of wrong. And from which said finding it is manifest that the jury rendered their verdict against the law as given them in charge, because the corporation could only have been liable by the acts of its agents and employes and codefendants.

3. The verdict of the jury is capricious and not accounted for by the evidence in this: That all of the evidence showed that the corporation only acted in the prosecution of James, if at all, by and through its agents and employes Snyder and Spillane, its codefendants in the suit, and if any legal wrong was done that the same was done in the institution and conduct of the prosecution by Snyder and Spillane, or one of them, and not otherwise through any act of the corporation; and notwithstanding the charge of the court that there arose a joint and several liability as between all the defendants on such state of case, yet without any cause therefor under the evidence the jury found the corporation alone guilty of wrong, and the agents and employes guiltless, by which it is unmistakable that the jury found their verdict without reference either to law

or to the evidence.    Tynburg v. Cohen, 67 Texas, 220; Zapp v. Michael-lis, 58 Texas, 270.

Where there is a substantial dispute about the facts upon the issue of probable cause, the court should state the evidence, if any, which if true would establish a want of probable cause, and instruct the jury if they believe such evidence then that there is not probable cause; and should state the evidence, if any, which if true would establish probable cause, and instruct the jury if they believe such evidence then that there is probable cause.    The court should not submit a "mere question of law" to the decision of the jury, merely because there is a conflict of evidence as to one or more facts.    Landa v. Obert, 45 Texas, 539; Ramsey v. Ar-rott, 64 Texas, 320; A. T. & S. F. Ry. v. Watson, 15 Pac. Rep., 883, and cases there cited; Pennsylvania Co. v. Weddle, 100 Ind., 138; S. C., 26 Am. and Eng. R. R. Cases, 120, and cases there cited; Thelin v. B. & O., 59 Md., 539.

The court erred in refusing to give the special charge requested by defendant's counsel, as follows:  "The jury are charged that as a mat-ter of law Webster Snyder, one of the defendants herein, was not authorized by reason of his being general manager of the Gulf, Col-orado & Santa Fe Railway Company to institute or to authorize the in-stitution or conduct of the criminal prosecution complained of in the name of or for the account of the said Gulf, Colorado & Santa Fe Rail-way Company, because it is (as a matter of law) not within the scope of a general manager's business of a railroad corporation to institute or au-thorize the institution or conduct of such a criminal prosecution, and therefore, unless the jury are satisfied from the evidence that Webster Snyder had other authority given him by the Gulf, Colorado & Santa Fe Railway Company to act for that corporation in connection with the prosecution complained of, or that the corporation approved or ratified any conduct of its general manager, Snyder, wherein said Webster Sny-der acted as charged in the petition (if he did) and after full knowledge of the facts, then the jury are charged that the said Gulf, Colorado & Santa Fe Railway Company would not be liable for any such acts of Webster Snyder although he was the general manager of the corporation." Because the jury were instructed by the court in its charge (amongst other things) "that corporate companies are not responsible for the acts of their agents or employes, unless such acts are performed for and on behalf of the company and are performed within the scope and purview of the power conferred on them by the company, or are ratified by the company," and it was therefore proper for the court when asked so to do to give in charge to the jury what was in law the scope and purview of the powers of a general manager of a railroad company whose busi-ness it was, as shown by the evidence, to do such things only as are usually done by common carriers of freight and passengers; and espe-

cially was this proper to have been done as was asked by the charge re-fused when all the evidence introduced showed that no power had been conferred by the company to do anything more or other than to act for the railroad company in attending to its affairs as a common carrier of freight and passengers. And in the absence of any directions on the subject of the charge refused the jury might have thought, as they must have done, that the general manager of a railroad company was author-ized to do whatever he may have wanted to do outside of the duties of his employment, and if he did, being general manager and using ma-chinery of the road for his purpose, that the corporation would be liable because the general manager had incidentally used his powers as general manager to do a damaging act. And doubtless the verdict against the railroad company arose from such misapprehension because there was no evidence that the company had ever conferred any power on its general manager to institute or authorize the institution or conduct of a criminal prosecution and there was no evidence that any such acts had been rati-fied by the corporation. Pressley v. M. G. R. R. Co., 11 Am. and Eng. R. R. Cases, 227; U. P. Ry. v. Beatty, 26 Id., 84; C. R. & B. Ry. Co. v. Smith, 76 Ala., 25; Gillet v. Mo. Pac. Ry., 55 Mo., 315.

When a party in good faith lays all of the facts before an attorney of good repute in the profession, and is advised by such attorney that there is sufficient ground for instituting the prosecution and in good faith pursues such advice, then such party as a matter of law has probable cause. In such case if the attorney's advice be bad the action should be against him and not against the client who has been misled thereby. Cooley on Torts, 183; Big. on Torts, 200; Snow v. Allen, 1 Stark., 502; Stone v. Swift, 4 Pick., 389; Stewart v. Souneborn, 98 U. S., 187; Railroad Co. v. Hunt, 29 Am. and Eng. R. R. Cases, 234; Ross v. Innis, 35 Ill., 487; Ames v. Snider, 69 Ill., 377; Laid v. Taylor, 66 Barb., 139; McCarthey v. Kitchen, 59 Ind., 500; Miller v. Ames, 37 How. Pr., 289; Anderson v. Friend, 85 Ill., 135; Davie v. Wisher, 72 Ill., 262; 2 Sutherl. on Dam., 108; 2 Greenl. on Ev., sec. 459, and notes; see cases cited in Cooley, Sutherland, and Greenleaf; Smith v. Zent, 59 Ind., 362; Platt v. Bransdorff, 40 Wis., 107; Horne v. Sullivan, 83 Ill., 330.

*F. Charles Hume* and *Howard Finley,* for appellee.—The demurrer was properly sustained. The new trial granted to Snyder was a new trial of the whole cause. Wootters v. Kauffman, 67 Texas, 496, 497.

The appellant can not complain that damages were visited on it alone, and that the jury relieved its agents and employes from the burden of the wrong done by them in its interest.

The evidence fully warranted the jury in finding that the arrest of

James was without a probable cause and with malice, and that appellant was liable in damages therefor.

Want of probable cause. Landa v. Obert, 45 Texas, 544; Ramsay v. Arrott, 64 Texas, 323; Heldt v. Webster, 60 Texas, 208; Jacobs, Bernheim & Co. v. Crum, 62 Texas, 405–407; Culbertson v. Cabeen, 29 Texas, 256; Abbott's Tr. Ev., 653; 2 Addison on Torts, secs. 880, 853; 4 Wait's Act. and Def., 343; 2 Greenl. on Ev., secs. 454, 456, p. 412.

Malice. Gabel v. Weisensee, 49 Texas, 131, citing with approval Stevens v. Midland Ry. Co., 10 Eq. H. & G., 352, and Haddrick v. Hesley, 12 Q. B., 267; Carothers v. McIlhenny, 63 Texas, 141; Ramsay v. Arrott, 64 Texas, 322, 323; Jacobs, Bernheim & Co. v. Crum, 62 Texas, 408, 416; Culbertson v. Cabeen, *supra;* Mott v. Corey, 76 Maine, 87; 24 Am. Law Reg., 78; 2 Greenl. Ev., sec. 453; 4 Wait's Act. and Def., 345, 347; Abbott's Tr. Ev., 653.

Prosecutor's evidence as to motive incompetent and irrelevant. Gabel v. Weisensee, 49 Texas, 142; Miller v. Jannett, 63 Texas, 86, 87.

Appellant liable. G. H. & H. Ry. Co. v. Donaho, 56 Texas, 162; Carothers v. McIlhenny, 63 Texas, 147; Nat. Bank v. Graham, 100 U. S., 702; Ricord v. Cent. Pac. Ry. Co., 15 Nev., 167, 176, 177; Morawetz's Priv. Corp., secs. 89–93; Cooley on Torts, 119–122; Taylor's Law Priv. Corp., secs. 341, 342; Pierce on Railroads, 273, citing among other cases in note 4 Carter v. Home Machine Co., 5 Md., 290; 7 The Reporter, 621; Wait's Act. and Def., 339.

The questions of whether or not there was probable cause and whether or not there was malice are to be determined solely upon the evidence of what was done, and not upon what was asserted by the prosecutors and their counsel to have been their motive in doing it. Motive is to be ascertained by a consideration of the acts done, and all other evidence of its character is irrelevant and incompetent. Gabel v. Weisensee, 49 Texas, 142; Miller v. Jannett, 63 Texas, 86, 87.

If the jury did not believe that the circumstances were sufficient to warrant the good faith belief of a cautious man that the offense charged had been committed it was their duty to find there was no probable cause—even should they have concluded that the prosecution was in fact in good faith; and if they believed the prosecution was not based on good faith belief of James's guilt their duty was the same.

If they believed that any motive other than that of bringing James to justice for the violation of public law inspired the prosecution it was their duty to find there was malice. Ramsay v. Arrott, 64 Texas, 323; Jacobs, Bernheim & Co. v. Crum, 62 Texas, 416; Landa v. Obert, 45 Texas, 544; Gabel v. Weisensee, 49 Texas, 138, 139; Culbertson v. Cabeen, 29 Texas, 256; 2 Addison on Torts, secs. 880, 853; 4 Wait's Act. and Def., 343; Abbott's Tr. Ev., 653.

Appellant through its general manager Snyder having instigated or as-

sented to the prosecution in the absence of probable cause, as known to him, it is no defense for appellant—even if the fact be indubitably established by the evidence—that Spillane, the actual affiant, had probable cause to believe the complaint true. Woodworth v. Mills, 19 Cent. L. J., 317; Cooley on Torts, 120; 61 Wis., 60, 61.

The charge defined probable cause and properly submitted the issue of probable cause *vel non* to the jury, and it does not appear that appellant either excepted to it or asked further instructions. Landa v. Obert, 45 Texas, 543; Ramsay v. Arrott, 64 Texas, 323; Culbertson v. Cabeen, 29 Texas, 256; Woodworth v. Mills, 61 Wis., 62; Powell v. Haley, 28 Texas, 55, 56.

The charges requested were properly refused. It is no defense *per se* to the action that it was instituted upon the advice of counsel, whether already familiar with the facts or acquiring them from the prosecutors. Jacobs, Bernheim & Co. v. Crum, 62 Texas, 407–409; Ramsay v. Arrott, 64 Texas, 324.

HOBBY, JUDGE.—This suit for damages grew out of the arrest and alleged malicious prosecution of the appellee, James, for the offense of perjury, by the appellant acting through its general manager, Webster Snyder, and Spillane, his clerk, acting under said manager's directions, all of whom are jointly and severally sued. The petition contains all of the allegations necessary to maintain the action.

The defense was a general denial, plea of *res adjudicata*, probable cause, and that appellant acted without malice. Exceptions were sustained to the plea of *res adjudicata*. A trial resulted in a verdict for the plaintiff against the appellant alone for the sum of $8000 actual damages, upon which judgment was rendered against appellant for that sum in favor of the plaintiff, and the defendants Snyder and Spillane were discharged with their costs.

The affidavit made by Spillane, upon which the arrest and prosecution of James was had, charged that in a civil cause pending in the District Court of Galveston County wherein one A. W. Fly was plaintiff and appellant was defendant, brought to recover damages for personal injuries caused by the derailment and wreck of a passenger train of appellant, the said James testified by deposition falsely, willfully, and knowingly as follows: "I saw a loose wheel on a hind passenger coach with a hot box (referring to a passenger train of appellant at Rosenberg about the 20th or 25th of April, 1884) and the car inspector of appellant packing said box. The wheel had slipped from its proper bearings and the axle had worn bright by the friction of the wheel. The car inspector of appellant and the Sunset route were both present and saw the condition of the wheel; and while the box was being packed the inspector of the Sunset route remarked 'that if the car was on his line he would set it

out.' This remark was made in my hearing; can not remember the exact conversation that took place, but it was to the effect that it was dangerous to send that car on. I was under the impression that the car would be set off, but when I saw the train go on remarked to the inspector of appellant, 'It was a d—d bad job.' He remarked: 'I guess she'll run.' I saw the train on its arrival at Rosenberg depot; it was not in a condition to proceed on its journey with safety in consequence of the wheel of one of the coaches being loose; am satisfied the train was wrecked in consequence of the condition of the wheel. Appellant's inspector afterwards told me he was required to report the condition of the train on the morning of the accident and asked me what he should say. I told him to tell the truth. He said he would do no such thing, he would report only a few hot boxes. On the morning of the day of the accident one of appellant's coaches had one loose wheel; my attention was attracted by the condition of the wheel; it was so glaring I could not pass it unnoticed. I did not ask Snyder, general manager of appellant, for a position on his road or intimate that I desired one."

Under the first assignment the objection is made that the verdict is not responsive to the charge, which directed the jury in the event their verdict should be against some of the defendants and not all of them the verdict should state the defendant or defendants against and in favor of whom the jury should find.

This objection is one which we think goes rather to the form than the substance of the verdict.

All of the defendants were sued, and the verdict was in plain language "in favor of plaintiff against the defendant the Gulf, Colorado & Santa Fe Railway Company." The verdict by necessary implication found in favor of the defendants Snyder and Spillane. If they entertained any doubt as to that it could have been corrected at the time. There was certainly no ambiguity in the verdict as to appellant. In cases where the verdict was not altogether certain it has been uniformly held in this State that it should be upheld when its meaning can be made manifest beyond doubt by reference to the entire record. Pearce v. Bell, 21 Texas, 691; Avery v. Avery, 12 Texas, 57.

In a case where separate issues were submitted to the jury with directions to find upon each and the verdict responded in general terms, the failure to find upon the issues as instructed was held not to affect the verdict. Johnson v. Richardson, 52 Texas, 483.

In this case the judgment correctly interpreted the finding of the jury in favor of defendants Snyder and Spillane by discharging them with their costs.

The exception to the defendant's plea of *res adjudicata* we think was properly sustained. At a previous trial a verdict had been rendered in favor of the plaintiff against defendant Snyder, and finding appellant and

defendant Spillane not guilty.  Upon this verdict judgment was entered in their favor that plaintiff take nothing by his suit, and they were discharged with their costs.  This judgment was set aside and a new trial granted upon motion of the defendant Snyder alone.  Upon this trial it was pleaded in bar of plaintiff's right to recover from appellant.

The effect of the order granting a new trial on the motion of defendant Snyder, who was with appellant and Spillane jointly and severally sued, was to vacate the former judgment and operated as a new trial as to all of the defendants.  Garey v. Garnett, 45 Texas, 401; Wootters v. Kauffman, 67 Texas, 488.

The court charged the jury that "Where the agents of a corporate company act for and in behalf of the company and within the scope of their powers, or are ratified by the company, and such acts are willfully and purposely done with malice and without probable cause, the company and their said agents so acting are all each jointly and severally liable for the damages which such acts cause to the injured party."

It is contended that as the verdict is against only the appellant, and as the appellant could have only acted through its agents, its codefendants, who were held guiltless of any wrong, that therefore the verdict is in total disregard of the law and the charge of the court.

It is claimed that the verdict is capricious and not accounted for by the evidence and is manifestly found without reference to the law or evidence, because all of the evidence showed that the appellant only acted in the prosecution of James, if at all, through Snyder and Spillane, its codefendants, and that if any wrong was done it consisted in the institution and conduct of the prosecution of appellee by Snyder and Spillane, or one of them, and not otherwise through any act of appellant, and that notwithstanding the charge that there arose a joint and several liability as between all of the defendants, yet appellant alone was found guilty.

It may be admitted we think that for the reason assigned the verdict is not altogether consistent, and it may be said to be contradictory.  But it does not necessarily follow that this alone will be sufficient to impair or destroy the validity of a verdict.  In actions growing out of that class of torts characterized by the existence of a wrongful intent as distinguished from torts arising from negligence, the rule is recognized as just which compels each of the wrongdoers when sued to bear and assume the responsibility of all.  The injured party may sue one, any number, or all chargeable with the tort, and it is no defense if one is sued that the others are not required to share his responsibility; nor where all are sued would it be any defense that one only is made to assume the liability for the acts of all.  The reason is that there can be no contribution as between them.  Cooley on Torts, sec. 133.  "While the law permits all the wrongdoers to be proceeded against jointly, it also leaves the injured party at liberty to pursue any one of them, severally, or any number less

than the whole, and to enforce his remedy regardless of the participation of others." Id.

Had the verdict in this case been against all of the defendants the liability of the appellant would not have been less than it is as the verdict now stands.

The verdict then not being in a violation of the principles of law applicable to this class of torts, the question involved in the proposition contended for is simply whether a capricious or inconsistent verdict alone will impair its validity and of itself authorize a reversal. We think not. That it may be a significant circumstance *illustrative* of passion, or prejudice, or misconduct, when connected with other circumstances sufficiently strong to indicate these, is no doubt true. But alone, unsupported by anything else in the record tending to show misconduct, it has been held not to be of itself adequate cause for a reversal.

In the case of The Railroad Company v. Gordon, 70 Texas, 90, it is said: "That if the verdict be in one material respect the result of prejudice, passion, or other influence, not arising from a dispassionate consideration of the evidence, the inference would be strong *where it was for a large sum* that that *feature* of it was similarly controlled."

In the case cited special issues were submitted to the jury directing them to respond in their findings as to whether the accident was caused by a defective road bed or was it the result of a defective locomotive. There was an affirmative reply to each issue thus submitted. The objection was made to the verdict in that case as in this that it indicated passion and prejudice and was contradictory. The court recognized it as being inconsistent so far as it held that both were the efficient cause of the accident. But it was said "that this did not furnish a sufficient reason for a reversal if by looking to the entire case it was ascertained that the verdict was uninfluenced by other improper motive." It was ascertained in looking to the assignment in that case as to the excessive verdict that the amount sued for, $25,000 actual and $25,000 exemplary damages for personal injuries, were assessed by the verdict. Pursuing the rule adopted in the case cited and considering the assignment in this case complaining of the verdict being excessive, we find the amount sued for as damages caused by the alleged malicious prosecution of appellee for the offense of perjury to be $15,000 actual and $15,000 exemplary, and the amount found in his favor to be $8000 actual damages, but little in excess of one-half of the actual damages claimed, and under evidence to the effect that the result of the prosecution was to break the appellee up, prevented him in a measure from obtaining employment, required him to perform labor he had not previously done, and estranged from him those or many of them with whom he had associated in his business vocation. It will be seen then that in looking to the amount of damages assessed and considering it in connection with the inconsistency of

the verdict with respect to the feature of it referred to, it can not, we think, be said that it shows that the verdict was the result of improper influences or is contrary to law or indicative of that misconduct which would authorize a reversal upon that ground.

It is insisted in the argument of appellant under the eighth assignment that the verdict being confined to actual damages demonstrates that the defendant did not act with malice or without probable cause, and that the facts fail to show a want of probable cause for the arrest of plaintiff, and rationally considered they point to no circumstances showing the existence of malice.

The testimony is conflicting as to whether there was that want of probable cause which has been long recognized as an essential element in this action. And the jury having found that there was no probable cause for the prosecution of James it is unnecessary to determine whether a reasonable consideration of the facts point to the existence of malice, because the jury could infer malice if the evidence authorized them to believe that there was an absence of probable cause.

That it was believed prior to the deposition of James and his prosecution that a loose wheel was the cause of the wreck of appellant's passenger coach at Kinney, in April, 1884, was a fact known to Snyder, appellant's general manager. There was evidence that a few days after the accident (which gave rise to the Fly suit and the others pending at the time of the prosecution) a telegram was shown Snyder by Crowley, the road master, from Newton, the train master, containing the words "loose wheel." That Snyder complimented Newton's brevity and remarked, "Of course we understand it but the world does not."

It was in evidence also that reports had been made of the accident which were filed in the proper offices of the company, and which were under Snyder's control in May, 1884. When the plaintiff interviewed him he knew about the loose wheel. Crowley had testified in some case then pending to the effect that the wreck was caused by a loose wheel, and Snyder had heard of this testimony but had not seen the deposition of Crowley. From these and a number of facts testified to the jury believed that there was no probable cause as defined by law for the prosecution of James for perjury by reason of the deposition taken in the case of Fly against the appellant.

There being evidence from which the jury found there was no probable cause for the prosecution they may have inferred malice from that fact. We do not think that because the jury having found both a want of probable cause and malice, and might therefore have assessed exemplary damages, but found only actual damages, this would afford a reason for setting aside the verdict on the ground that such a finding indicated that there was no malice. If the proof would have supported a

verdict for $15,000 actual damages it would furnish no ground for setting aside the verdict that it found only $8000 actual damages.

The proposition under the eighteenth assignment is that " where there is a substantial dispute about the facts upon the issue of probable cause the court should state the evidence, if any, which if true would establish a want of probable cause, and instruct the jury if they believe such evidence then that there is not probable cause, and should state the evidence, if any, which if true would establish probable cause and instruct the jury if they believe such evidence then that there is probable cause."

We think if this instruction had been given it would have been error. The definition contained in the charge of the court of probable cause is in accord with the authorities and is uniformly accepted as correct. When the facts are in controversy the question of probable cause must necessarily go to the jury, and the court should give such instructions as will enable them to draw correct conclusions from the facts as they find them. Landa v. Obert, 45 Texas, 453. This rule stated in the case cited is followed by the definition of probable cause which it was said should have been given in that case and which in this was given.

It is earnestly insisted that the court should have instructed the jury " that as a matter of law Snyder was not authorized by reason of the fact that he was general manager of appellant to institute or authorize the institution of the prosecution against James for the company, because as a matter of law it was not within the scope of a general manager's business of a railroad company to institute such proceedings, and that unless there was other evidence than the fact that he was such general manager from which the jury believed he had such authority they would find for the defendants."

We do not think the jury should have been charged to the effect that as a matter of law that Snyder was not authorized by reason of the fact that he had the entire control and management of the business interests of appellant to institute or authorize the institution of the prosecution against James. Whether this was within the legitimate scope of his power as such general manager, acting for and on behalf of the company, was a question of fact to be determined by the jury. Whether a servant did the act with a view to his master's service or to serve a purpose of his own is a question for the jury. Pierce on Railroads, 279. Nor is it any defense that the particular act by which the injury was inflicted was not authorized by the charter. Id., 280.

The general authority to do the act may be inferred from the nature of the employment and the usual course of business.

In the case cited by appellant, Pressley v. M. & G. Railroad Company, 11 Am. and Eng. R. R. Cases, 229, the rule is there laid down " that if an agent while acting within the range of his employment do an act injurious to another through negligence or intention, then for such abuse of auth-

ority conferred upon him or implied in his employment the employer is responsible," etc.

This is said to be a modification of the former less satisfactory rule which required "the willful act to have been previously ordered or subsequently ratified." In the case cited it was held that "an agent of a railroad company having authority as the land agent of the company to make leases, collect rents, stumpage, etc., did not have authority to institute a criminal prosecution for offenses committed with reference to the property in his custody and bind his principal in damages for a malicious prosecution." In that case the evidence limited the authority of the land agent to the matters of supervising or looking after the particular lands of the company, collecting the rents, etc.

In the present case the evidence indicates that the entire business affairs and interests of the company were under the control and direction of Snyder. His testimony before the Recorder's Court reproduced on this trial was that he had authority to conduct the prosecution. As the manager of appellant, its property, road, and facilities for transportation were used under his authority for that purpose. It was shown to be within the line of his duty to look after and protect the business interests of the company, to prepare the papers and facts in the litigation affecting its rights. Suits were then pending in different portions of the State for damages arising from the wreck of the train at Kinney, caused by a loose wheel, and it was within the scope of his powers, if he had probable cause to believe that false testimony was being given in those cases, to take the proper steps to disclose that fact and protect the company. Had the evidence shown to the jury's satisfaction that such probable cause did exist, it would have been beneficial to appellant's interests in its effect upon the suits then pending.

Out of this right which the general manager had to protect the interest of appellant grows a corresponding liability for damages in the event of its exercise, as in this case, without probable cause and in such a manner as to bring it within the definition of a malicious prosecution.

In an action for malicious prosecution against a railroad company, where it was contended that the power of instituting a criminal proceeding was not conferred upon it by law, it was said: "Conceding that a corporation can not be bound unless for an act done in pursuance of some object embraced by its charter or conferred by law, it is not always or necessarily outside of the objects and privileges of a railroad company to prosecute criminal offenders. It is the object of such companies to acquire and protect its property by every lawful means. It is a lawful and commendable means to protect it by the institution of criminal proceedings against those infringing such rights, etc. * * * No law or public policy restrains them in this respect, and to hold that they

can not be held to a proper accountability would endow them with an invidious privilege." Ricord v. C. P. R. R. Co., 15 Nev., 176.

Discussing in the same connection the character of proof requisite in such a case to show that a prosecution was instituted and conducted by its authority it was further said: "We do not consider it necessary to produce a resolution of a board of directors." "In the absence of opposing proof" it was said that "its legal advisers, acting in conjunction with such of its agents and servants as have knowledge of the facts, will be authorized to institute the proper proceedings."

We do not think probable cause is conclusively established by proof that defendant acted under the advice of counsel. This may be considered as a circumstance showing both want of malice and as supporting the defense that there was probable cause. But we do not understand that it conclusively establishes the existence of the latter or the absence of the former. Jacobs, Bernheim & Co. v. Crum, 62 Texas, 411.

We have considered the assignments relied upon in the argument of appellant for a reversal, also several mentioned in the brief of appellant, and we are of opinion that the judgment should be affirmed.

*Affirmed.*

Adopted February 12, 1889.