JOHN HEAVEY, Appellant, v. THE HUDSON RIVER WATER POWER AND PAPER COMPANY, Respondent.

*Master and servant — neglect of the former to furnish a safe place of labor and proper appliances — contributory negligence.*

In an action to recover damages sustained by an employee, through the alleged negligence of his master, by falling into a vat of hot liquor while he was engaged in his employment, it was claimed that the master had neglected to give to the servant a safe place of labor and to furnish him with proper appliances, and that in consequence of this neglect the injury had occurred. The plaintiff, who was fifteen years of age, was engaged in defendant's pulp manufactory in pushing, with a wooden pole which he held in his hand, an iron pipe eight feet long and seven inches in diameter, which moved horizontally upon a joint over a series of vats discharging hot liquor into them successively. The end of the wooden pole was placed against a flat flange upon the end of the pipe, in moving which the whole weight of the plaintiff's body rested upon the pole. While plaintiff was standing upon certain pipes which extended over these vats, his pole, the end of which had become spongy and saturated with liquor, slipped and he fell forward into a vat over which he stood and sustained serious injury.

*Held,* that the plaintiff assumed all the risks incident to his employment, except those which the reasonable care of the defendant could protect him against.

That the plaintiff did not, however, assume these risks which his master should have protected him from, unless he was guilty of negligence in accepting the place of labor which his master assigned him.

That it was proper to submit to the jury the question whether the plaintiff's risk of falling into the vat, in case he should fall at all, was not one for which the defendant was responsible.

That the fact that the plaintiff knew that the end of his pole had become soft and spongy did not justify the trial court in holding that his further use of it constituted negligence which contributed to his injury, and that consequently he could not recover the damages resulting therefrom

That while a servant would ordinarily be expected to know when his tools needed repair, yet in the absence of experience and instruction a lad fifteen years of age could not be expected to know intuitively, or as fully as his experienced master, in regard to these matters, and it was reasonable that he should be warned in regard to such deterioration of the tool as endangered his safety, especially when it was of such a nature as required instruction in order to arrest his attention.

APPEAL by the plaintiff from a judgment of the Supreme Court, dismissing his complaint, entered in the office of the clerk of the county of Saratoga on the 29th day of January, 1890, and from an order directing a nonsuit made on the 21st day of January, 1890.

The action was tried before the court and a jury at the Saratoga Circuit, and at the close of plaintiff's case a nonsuit was directed and judgment was entered for the defendant.

The action was brought to recover for injuries sustained by the plaintiff, an employee of defendant, by falling into a vat of hot liquor while he was engaged in its employment. The plaintiff charged that the defendant neglected to assign him to a safe place of labor, and to furnish him with proper appliances, and that he sustained his injuries in consequence of this neglect of the defendant.

On the 31st day of March, 1885, the plaintiff, then fifteen years of age, was engaged in defendant's paper pulp manufactory; his duty was to guide, by pushing with a wooden pole which he held in his hands, an iron pipe, eight feet long and seven inches in diameter, which, moving horizontally upon a joint over a series of vats, discharged hot liquor into them successively, as the plaintiff pushed it, so that its orifice of discharge rested above whichever vat he needed to supply with the liquor. This iron pipe, movable horizontally upon its hinge, was very heavy; it was about two feet above the level of the top of the vats, its discharging end curved downwards; the plaintiff pushed it from vat to vat by placing the end of his wooden pole against a flat flange or band upon the end of the pipe, resting that end of the pole upon a hook or iron loop or rest, which was attached to the end of the pipe, and then pushing upon the pole with the whole weight of his body. While pushing this pipe he had to stand upon other iron pipes which lay upon the top of the vats, near one side of them. There were nine vats standing side by side in the pit room; the center vat received the liquor from the pipes which lay upon the top of the adjacent vats; from the center vat the liquor was distributed through two pipes, one on the right and the other on the left, to the vats upon either side.

There were four vats on each side of the center vat; these vats were each twelve feet by eight, and six feet deep. The movable pipe in question was the terminal part of the pipe leading from the central vat. The vats were uncovered except by the pipes leading to the central vat. While the plaintiff was standing upon these pipes pushing the movable pipe, his pole slipped from the flange, or end of the movable pipe, causing him to lose his balance and fall forward into the vat over which he stood. He was soon extricated, but sustained

serious injury. The end of the pole placed against the movable pipe had become soft or spongy by use and saturation in the liquors. Upon the trial its slipping was attributed to that cause. While it did not clearly appear from the evidence, the evidence tended to show, that the end of the pole rested in the iron hook or loop, and for some reason the force employed in pushing the pole raised it upward out of its rest, and thus it slipped. The top of the vats was about a foot above the floor. The plaintiff had been engaged in this employment six weeks. He had had no previous experience. He was doing his work as he had been instructed by the foreman to do it. Before the plaintiff was employed, a rope had been used to pull the movable pipe from vat to vat. Why this method was abandoned does not appear. The vats had also been more effectually covered. The trial court granted the nonsuit because the plaintiff assumed the known or apparent risks of the business, and he must have known better than any one else that the end of his stick had become soft and broomy, and, therefore, he knew better than any one else that it was less fit for use.

*T. F. Hamilton*, for the appellant.

*L. B. Pike*, for the respondent.

LANDON, J.:

The plaintiff assumed all the risks incident to his employment, except those which the reasonable care of the defendant could and, therefore, should have protected him against. Grant that the pole was in good condition, and that the plaintiff's liability to lose his balance, or slip and fall, was as common to any other place as to this, and thus far the plaintiff assumed the risk. That he should slip and fall was, independently of the place into which he should fall, too ordinary and common an experience with such a youth to be a matter of concern to his master or himself. But if, when he should fall, he must inevitably fall into a deep vat containing scalding liquor, then the situation was different. If, by reasonable care, the master could protect him from falling into the vat, as by guard rails, or covers, or other appliances, not materially obstructive to the business, then the omission of some such protection would be the fault of the master. The plaintiff did not assume the risks which his master

should have protected him from, unless he can be properly charged with negligence in accepting the place of labor. which his master assigned him. If the defendant should claim that the plaintiff was negligent in the respect last stated, all he could ask upon the evidence would be to have the jury pass upon the question. We think, under the circumstances presented, that it was a question of fact whether the plaintiff's risk of falling into the vat, in case he should fall at all, was not one for which the defendant was responsible, and, therefore, if the nonsuit was granted because it was clear as a matter of law that the plaintiff assumed it, it was error.

The learned trial judge, in effect, held that because the plaintiff knew that the end of his pole had become soft and spongy, he therefore knew that it had become unfit for use, and his further use of it was negligence which contributed to his injury. This proposition assumes that the facts admit of but one inference, and that against the plaintiff. We think that fair men might, with entire fairness, make a different inference. The testimony tends to show that the plaintiff faithfully followed his instructions. He was fifteen years old, without previous experience, was given this place of labor, this pole, and certain instructions as to its use. He knew, of course, that the end of the pole was becoming soft and spongy. But he might or might not suspect that it was becoming unsafe. We have no right to assume that he knew. No one had told him, and his experience had not instructed him. Why should he expect it to slip or fear it? The jury would not exact from this lad any more thought or care than he was able to give, nor any more knowledge than he had. We think it was for the jury, and not for the court, to determine whether the plaintiff was negligent in this respect.

If the jury should conclude that the plaintiff ought to have been instructed with respect to the proper treatment of his pole in case the end should become soft, it would follow that the failure to instruct him was an omission of duty on the part of the defendant.

A servant may ordinarily be expected to know when his tools need repair, but, in the absence of experience and instruction, a lad cannot be expected to know it intuitively or as fully as his experienced master; and it is reasonable that he should be warned against such deterioration of them as endangers his safety, especially when it is

of such a nature as requires instruction to arrest his attention or excite his apprehension.

Every case must be governed by its own circumstances. In this case the question whether the defendant ought to have given the plaintiff further instructions seems to be involved and to bear directly upon the question of the plaintiff's negligence and also upon the question of the defendant's negligence. It is a question for the jury.

The judgment should be reversed and new trial granted, costs to abide the event.

LEARNED, P. J., and MAYHAM, J., concurred.

Judgment reversed, new trial granted, costs to abide event.