## MORGAN *v.* HUDSON RIVER ORE & IRON CO.

*(Supreme Court, General Term, Third Department.  July 11, 1891.)*

MASTER AND SERVANT—DUTY OF MASTER—RULES TO PROTECT SERVANT.

In an action by a servant against his master for personal injuries it appeared that defendant operated a series of kilns for roasting ore.  The kilns stood on a slight incline, and were numbered from 1 to 10; No. 1 being the uppermost.  In front of the kilns was laid a railway, on which cars were run to carry ore from the kilns. The cars would sometimes run down the incline of their own weight, and sometimes they were drawn by horses.  In loading the cars, ore sometimes fell on the track, and had to be removed before the cars could pass on.  Shovels, picks, and rakes were provided for removing ore from the track, and there was evidence that the superintendent had given instructions that fallen ore was to be removed with such implements.  At the time of the accident plaintiff was removing ore from the track under a car standing in front of one of the kilns.  A car was standing at the kiln above, and plaintiff told the workmen engaged there to look out for his safety, and not let their car move while he was cleaning the track.  Plaintiff then raked out what ore he could with his rake, and laid down to remove the balance.  While so occupied the car above moved down, and pushed plaintiff's car along, causing the injury complained of.  It did not appear that the men at the upper kiln were negligent.  *Held,* that the question whether defendant was negligent in omitting to prescribe proper rules for the guidance of its servants was properly submitted to the jury.  Following *McGovern* v. *Railroad Co.,* 123 N. Y. 280, 25 N. E. Rep 373.

Appeal from circuit court, Columbia county.

Action by Thomas F. Morgan against the Hudson River Ore & Iron Company.  From a judgment entered on a verdict for plaintiff, defendant appeals.

Argued before LEARNED, P. J., and LANDON, J.

*Matthews & Smith,* (*Frank Smith,* of counsel,) for appellant.  *L. F. Longley,* (*R. E. Andrews,* of counsel,) for respondent.

LEARNED, P. J.  This is an action to recover for injuries alleged to have been received by plaintiff, an employe of the defendant, when engaged in work for it, which injuries it is alleged were caused by the negligence of defendant.  Several grounds of alleged negligence are stated in the complaint. All were withdrawn by plaintiff at the close of the case, except one, viz., that defendant negligently omitted to provide and promulgate rules and regulations for the guidance and government of its workmen for their protec-

tion. We have therefore to consider only this single subject. The defendant has 10 kilns for roasting ore, each about 25 feet in diameter, standing in a row about 10 feet apart, and numbered from 1 to 10. They stand on a slight decline, No. 1 being the uppermost. Along the kilns is a narrow-gauge railroad, on which run cars, which are loaded with ore from the kilns, and then taken to the point of shipment, some 500 feet distant. At that part of the railroad by the kilns the cars will usually run down of their own weight, being, however, sometimes started or drawn by a horse. Beyond kiln No. 10 an engine draws them. In loading these cars from the kilns it often happens that ore falls on the tracks, and obstructs the movement of the cars. It is necessary to remove it. There are shovels, rakes, and pick-axes there, with which the workmen remove the ore that has thus fallen on the rails, so that the cars may move. On the day of the accident plaintiff was at work opposite kiln No. 3. The ore ran over the car on the side next the kiln, so that it blocked the wheels about a foot and one-half from the track. Some fell in front of the wheels; some on the center of the track. There were two wheels on each side of the car. The ore was between and in front of the wheels. There was a loaded car opposite kiln No. 2. Two workmen,—one called Smith; the other, the Hungarian,—were at the car opposite No. 2. Plaintiff spoke to them, and told them to look out for his safety, when he was clearing out the car; not to move the cars, or let them run down on him, until he got through. They said they would. The car at which plaintiff was working opposite No. 3 was blocked with a block of wood. The plaintiff's testimony conflicts with itself. He sometimes says he blocked the car himself, and sometimes he says he did not know who blocked it. The plaintiff raked out between the wheels with the rake. Then he lay down to clean out what he could not reach with the rake. As he reached over, a car above came down, and pushed the car where he was working. His fingers were caught under the wheel of the car, and were injured. The plaintiff says the block of his car was not there at the time of the accident, but he does not know who took it out. There is evidently some confusion in his mind, which is not strange. It was in evidence that the superintendent had given oral instruction that the men in removing the ore from the track should use, and had directed them to use, the rakes. The foreman also states that he had given instructions that if there was a large quantity of ore they should take the shovel; if not, that they should put their backs to the car, and try to shove it over. It is evident that, unless the amount of ore were too great, the car might thus be pushed along, crushing or forcing aside in its progress the ore which was in the way. It is not distinctly shown that the negligence of Smith and the Hungarian caused the accident. What started the car which was higher up the grade, does not appear. The workmen may have started it, or it may have moved of its own weight. We cannot determine which was the fact. Therefore it cannot be said that the accident was caused by the negligence of a fellow-servant. The court properly charged that, if it was so caused, the plaintiff could not recover. True, the plaintiff said that he requested Smith and the other workman to look out for his safety when he was under the car, and not to let their cars move while he was under the car at No. 3. But this only serves to show that they knew where he was. It does not show that they neglected any duty, or were negligent; for it is not shown that any duty was imposed on them by the regulations of defendant, or that the neglect of such regulations caused the car to move.

On the subject of the liability of a master for not making proper rules and regulations, we refer to *McGovern* v. *Railroad Co.*, 123 N. Y., at page 289, 25 N. E. Rep. 373. In that case the deceased entered a large bin of the defendant. He entered it through a trap-door in the bottom, for the purpose of shoveling the corn, and cleaning out the bin; the corn having ceased to run out at the spout. While in the bin, some corn which had become piled up

therein, probably owing to its heating, fell on him, and he was killed. In regard to this the court of appeals said: "The question might also have been left to the jury to determine whether the omission to make rules and regulations prescribing the conditions under which servants should be required or permitted to enter the bins at the bottom was or was not a neglect of such reasonable care," etc. It will be seen, in that case, that the rules and regulations suggested by the court referred to the person who was entering the bin, and not to some other person. It will also be seen that there was nothing "complex" in the business in which deceased was engaged. He was merely required to climb through a hole into a bin and shovel loose corn, and clean out the bottom of the bin. It will further be seen that no special rule or regulation was shown to have existed in similar elevators; but that the court of appeals said that the jury might determine whether the defendant ought not to have made some rule on that subject. It had been previously stated in the opinion that the defendant might have been found to be negligent in not making a proper inspection of the bin before permitting the servants to enter. The sentence we have above quoted, therefore, has no reference to such inspection, but suggests another ground of negligence,—that of the insufficiency of rules or regulations. What these rules or regulations should be was to be left to the jury. Of course, it is evident that to permit a jury to predicate negligence on the omission to make a rule which, after the event, the jury can say might, if it had been made, have prevented the accident, gives a great opportunity to hold corporations liable. This was shown by the result of the new trial in that case. And in the case of *Abel* v. *Canal Co.*, 10 N. Y. Supp. 154, this court was of the opinion that an expression in the charge, allowing the jury to conjecture that some rule, before unknown, would be a better rule,—that such an expression, standing alone, would be erroneous. Following, however, the language of the opinion in the *McGovern Case*, we do not see why the learned justice did not properly leave the question to the jury. He left it to them to say whether defendant's business was complex, difficult, or complicated, in which it was its duty to establish rules. Certainly it was as complex as that carried on by the defendant in the *McGovern Case*, in which the court of appeals held that the jury might find it was the defendant's duty to establish rules. He left it to the jury to say whether the rules proved were sufficiently explicit to guard the life and limb of the employes. It is true that the *Abel Case*, 103 N. Y. 581, 9 N. E. Rep. 325, is not quite analogous. There the alleged neglect was a failure to give sufficient notice that the testator was under the car where he was injured. In this the persons controlling the car which came down and struck plaintiff's car had actual notice that he was under it; and actual notice was better than the notice implied by a flag, red or blue. But the language quoted from the *McGovern Case* speaks of rules prescribing the condition under which servants should be permitted to put themselves in places of danger. It therefore justifies the submission to the jury of the question whether some reasonable rule might not have been made which might have prevented the accident. In the *McGovern Case* the court said that the case was not free from doubt; and the same remark might be made here. But of course there will be no doubt of the result when a jury is to decide whether the master ought not to have promulgated rules under the circumstances of the case, "as a reasonable care and precaution." The defendant urges that the accident was caused by the negligent or wrongful act of co-employes. We have already considered this point. The judge properly charged in respect to it, and we cannot hold that the cars necessarily started by their neglect, or by their act. If the defendant was held liable for permitting that car to start and come down on the plaintiff's car, then cases like *Searles* v. *Railway Co.*, 101 N. Y. 661, 5 N. E. Rep. 66, cited by defendant, might apply; but defendant is held liable only for neglect to promulgate rules. The defendant further insists

that plaintiff knew the risk, and took it as incident to his employment. If, however, it was proper, as held in the *McGovern Case,* to submit to the jury the question of negl.gence in respect to making proper rules and regulations, then it could not be held that he assumed a risk from which proper rules would have saved him. *Heavey* v. *Paper Co.,* 10 N. Y. Supp. 585; *String-ham* v. *Stewart,* 100 N. Y. 516, 3 N. E. Rep. 576; *Benzing* v. *Steinway,* 101 N. Y. 547, 5 N. E. Rep. 449. We are therefore of the opinion that the judgment and order should be affirmed, with costs.

LANDON, J., concurs in result.