## WILLARD v. HOLMES, BOOTH & HAYDENS.

(Common Pleas of New York City and County, General Term. February 6, 1893.)

1. MALICIOUS PROSECUTION—CIVIL ACTION—PROBABLE CAUSE.

In an action for malicious prosecution, it appeared that plaintiff, as manager of defendant corporation, in accordance with defendant's custom, and with authority from the board of directors, known to the stockholders, extended defendant's credit to a firm with which it had business relations, by indorsing the firm's paper in defendant's name. While such paper was outstanding, plaintiff was succeeded as manager by W., to whom, as well as to the directors, plaintiff fully explained the indorsement, showing that it was made in good faith, and in furtherance of defendant's business. But, plaintiff refusing to personally secure the indorsement to defendant, the latter brought suit, charging him with wrongfully using its name, and attached his property, he being a nonresident. Such suit was subsequently dismissed, after extending over a series of years; the court having found that plaintiff acted with full authority. *Held,* that the prosecution of the attachment suit was without probable cause, and malicious.

2. SAME—ADVICE OF COUNSEL.

Where defendant, in presenting its case against plaintiff for attachment, kept back important facts from its counsel, concerning plaintiff's explanation of the indorsement, and his good faith therein, defendant cannot shield itself under the plea that it proceeded on advice of counsel; such plea availing only where there was a full, fair, and honest statement of all the facts to counsel.

3. SAME—DAMAGES.

Where plaintiff's integrity was unimpeached up to the time of defendant's prosecution, and he was rated high in financial circles, and had been solicited to assume the presidency of a bank, and other equally important fiduciary positions, the loss of which were directly attributable to defendant's prosecution impugning his integrity, the loss of such office, together with the money expended in vindicating himself, and the general impairment of his social and mercantile standing, and the shame and humiliation endured, were all proper elements of damage against defendant; and a verdict for $31,700 will not be disturbed, where it does not appear that the jury were actuated by sympathy, passion, or prejudice.

Appeal from trial term.

Action by Samuel H. Willard against Holmes, Booth & Haydens, a corporation, to recover damages for malicious prosecution of an action charging plaintiff with having, while treasurer and manager of defendant, wrongfully used its name for the indorsement of the promissory note of another corporation, and for causing his property to be attached in such action. From a judgment for plaintiff entered on the verdict of a jury, and from an order denying a motion for a new trial on the several grounds specified in Code Civil Proc. § 999, defendant appeals. Affirmed.

Argued before DALY, C. J., and BISCHOFF and PRYOR, JJ.

William H. Harris, Edward M. Shepard, and John E. Parsons, for appellant.

Marshall P. Stafford, for respondent.

BISCHOFF; J.   Whatever the doubt in which the question was at one time involved, it is now well settled that a private corporation is liable *civiliter* for malicious prosecution, (Morton v. Insurance Co., 34 Hun, 366, affirmed 103 N. Y. 645; Bank v. Graham, 100 U. S. 699; Railway Co. v. Harris, 122 U. S. 597, 7 Sup. Ct. Rep. 1286; Williams v. Insurance Co., 57 Miss. 759; Carter v. Machine Co., 51 Md. 290; Wheless v. Bank, 1 Baxt. 469; Reed v. Bank, 130 Mass. 443; Railway Co. v. James, 73 Tex. 12, 10 S. W. Rep. 744; Hussey v. Railroad Co., 98 N. C. 34, 3 S. E. Rep. 923; Jordan v. Railroad Co., 74 Ala. 85;) and the malice of its officers and employes, or other agents, accompanying the performance of acts within, or incidental to, the discharge of their duties, is imputable to the corporation, (Railroad Co. v. James, 73 Tex. 12, 10 S. W. Rep. 744; Railroad Co. v. McKee. 99 Ind. 519,) unless those acts were intended as a mere cover for the accomplishment of some independent and wrongful purpose, (Hoffman v. Railroad Co., 87 N. Y. 25; Kolzem v. Railroad Co., [Com. Pl. N. Y.] 20 N. Y. Supp. 700; Donivan v. Railway Co., [Com. Pl. N. Y., filed Nov., 1892,] 21 N. Y. Supp. 457.)   Liability, it seems, is predicable of the malicious prosecution, without probable cause, of an ordinary civil action, (Pangburn v. Bull, 1 Wend. 345; Eastin v. Bank, 66 Cal. 123, 4 Pac. Rep. 1106; Closson v. Staples, 42 Vt. 209; Whipple v. Fuller, 11 Conn. 582; Lockenour v. Sides, 57 Ind. 360; McCardle v. McGinley, 86 Ind. 538;) and unquestionably so if the prosecution of the action be accompanied by the arrest of the person prosecuted or the seizure and detention of his property, (Cooley, Torts, [2d Ed.] p. 217; Newell, Mal. Pros. c. 1, § 26, p. 35, and cases cited.)   To maintain an action for malicious prosecution, plaintiff must establish that the prosecution has terminated in his favor; that it was unfounded, and without probable cause; and that the prosecutor was actuated by malice.   Wheeler v. Nesbitt, 24 How. 544; Besson v. Southard, 10 N. Y. 236; Heyne v. Blair, 62 N. Y. 19; Thaule v. Krekeler, 81 N. Y. 428; Anderson v. How, 116 N. Y. 336, 22 N. E. Rep. 695; Foshay v. Ferguson, 2 Denio, 617.   The termination of the alleged malicious prosecution is sufficiently shown if it appears that no further proceeding can be taken therein.   Robbins v. Robbins, 133 N. Y. 597, 30 N. E. Rep. 977.   "Probable cause" is defined to be "a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in 'his belief that a person accused is guilty of the offense with which he is charged," (Anderson v. How, 116 N. Y. 336, 22 N. E. Rep. 695; Carl v. Ayers, 53 N. Y. 14; Foshay v. Ferguson, 2 Denio, 617;) a concurrence of real belief, and reasonable grounds for it, (Farnam v. Feeley, 56 N. Y. 451; Shaul v. Brown, 28 Iowa, 37;) and "malice," in law, comprehends, not only as in the ordinary meaning of the term, a malevolent intention to injure another in his person, property, or good repute, but also any wanton or reckless disregard of another's inviolable enjoyment of his civil rights,

(Newell, Mal. Pros. c. 14, § 34, p. 524; Kolzem v. Railroad Co., [Com. Pl. N. Y.] 20 N. Y. Supp. 700; Voltz v. Blackmar, 64 N. Y. 440.) Applying the consideration of "probable cause," as above defined, it stands to reason that if the prosecutor knew, or ought to have known, or could, with reasonable diligence and caution, have ascertained, facts exculpating and exonerating the person accused or suspected, he cannot successfully urge that there was "probable cause" for prosecution. Fagnan v. Knox, 66 N. Y. 525; Wass v. Stephens, 128 N. Y. 123, 28 N. E. Rep. 21. Whether there was or was not "probable cause" is, if the evidence is not conflicting, or conflicting inference cannot be reasonably drawn therefrom, a question of law to be determined by the court; otherwise, it is for the jury, (Bulkeley v. Ketéltas, 6 N. Y. 384; Besson v. Southard, 10 N. Y. 236; Burns v. Erben, 40 N. Y. 463; Heyne v. Blair, 62 N. Y. 19; Thaule v. Krekeler, 81 N. Y. 428; Anderson v. How, 116 N. Y. 336, 22 N. E. Rep. 695; Hazzard v. Flury, 120 N. Y. 223, 24 N. E. Rep. 194;) and, while "malice" is not predicable wholly of the want of "probable cause," it may nevertheless be inferable from the same facts which establish the latter, (Wheeler v. Nesbitt, 24 How. 544; Thompson v. Lumley, 50 How. Pr. 105; 3 Lawson, Rights, Rem. & Pr. p. 1890, § 1098.)

Now, what are the facts in the case at bar? Defendant is a corporation chartered "for the purpose of manufacturing and dealing in all kinds of brass, copper, and Germansilver goods, plated ware, and metals composed wholly or in part of copper, brass, or Germansilver, and all articles composed in whole or in part of metal which it shall deem expedient, and to do such other things as are incident to the prosecution of said business, and to exercise such mercantile powers as may be convenient and necessary for the successful prosecution of said business." One of the articles of defendant's manufacture was a metal lamp, in connection with the use of which carbon was required, and for the supply of carbon it had contracted with the Forest City Carbon Manufacturing Company. Plaintiff had been for many years defendant's treasurer and manager, was authorized to use its name for the indorsement of commercial paper, and to him had been intrusted the general conduct of its business affairs. It had been defendant's constant practice, to the knowledge of its board of directors and stockholders, through its treasurer and manager, and at his discretion, to extend financial assistance to such persons or corporations as had established business affiliations with it, when required. In July, 1886, the Forest City Carbon Manufacturing Company, which for more than a year had supplied defendant with carbon, desiring to extend its works, and to comply with defendant's request for increased supplies, requested defendant, through its treasurer manager, plaintiff, for a loan of $10,000, which the latter granted, by indorsing the carbon company's note with defendant's name, causing it thus to be discounted, and remitted the proceeds to the maker. In the latter part of the year 1886, and while the carbon company's note, indorsed as mentioned, was still outstanding and unpaid, plaintiff resigned as defendant's treasurer and manager. Chandler N. Wayland, who had been previously elected president, was

thereupon also elected treasurer, and appointed manager, in plaintiff's stead, and assumed the management and control of defendant's business. The newly-elected president, treasurer, and manager, ascertained the fact of defendant's outstanding liability as indorser of the carbon company's note, at once applied to counsel, and instructed him to commence suit against plaintiff to recover damages for the alleged unauthorized use of defendant's name. Acting upon these instructions, counsel prepared the required summons and complaint for an action in the supreme court, as well as the papers necessary to obtain an attachment against plaintiff's property, he being a nonresident of the state, but at Wayland's request withheld service thereof, to await his further direction in the premises. Thereafter Wayland had an interview with plaintiff, at which the latter fully explained to the former, in detail, all the circumstances attending his indorsement of the carbon company's note. This explanation was repeated by plaintiff, in Wayland's presence, at a subsequent meeting of defendant's board of directors, which he attended at Wayland's request, and at which there was also present a director, George W. McGill, himself a stockholder of the carbon company, and who had advised the making of, and prepared, the contract under which the carbon company was supplying defendant with carbon. McGill, on the trial of this action, confessed that at the time of this meeting he was cognizant of the purposes for which plaintiff had indorsed the carbon company's note, and of the fact that plaintiff had indorsed it in the utmost good faith, and without wrongful motive or intent, but that he refrained from protesting against plaintiff's prosecution, lest his motives for so doing might be impugned. Heedless of plaintiff's explanation, regardless of the fact that he had indorsed the carbon company's note in the furtherance of defendant's business, pursuant to authority given him, and seemingly solicitous only that he should secure defendant against its contingent liability by a conveyance of his property, which he, protesting his innocence, declined to do, defendant's board of directors authorized Wayland to proceed with plaintiff's contemplated prosecution, and Wayland thereupon, and without further submission to counsel of the facts transpiring at the directors' meeting, advised counsel, by telegraph, to proceed with the supreme court action, and to attach plaintiff's property upon the complaint and papers previously prepared, which was accordingly done. Plaintiff defended, and the trial resulted in a judgment in his favor, establishing his claim of authority to indorse the carbon company's note, and the truth of his assertions at the directors' meeting. This judgment was affirmed at general term, (Holmes, Booth & Haydens v. Willard, [Sup.] 15 N. Y. Supp. 610,) and by the court of appeals, (125 N. Y. 75, 25 N. E. Rep. 1083.) True, the supreme court and the court of appeals differed concerning the legal deductions authorized by the facts, the former maintaining that the loan of money to its customers was not ultra vires on the part of defendant, and the latter tribunal determining that it was so in the instance of the loan to the carbon company, because it did not appear that the sale of carbon was within defendant's corporate authority. The facts established on the

trial, however, remained undisturbed, and the result reached by each of the appellate tribunals was the same,—that plaintiff had authority to indorse the carbon company's note, from defendant's directors expressly, and from its stockholders by acquiescence and acceptance of the benefits accruing from the sale of carbon, which precluded them from asserting the want of authority, and that plaintiff was not answerable to defendant. The facts determined in the supreme court action, and proved on the trial of this action, thus conclusively established that plaintiff was prosecuted, not only without cause, but also without "probable cause," since it would imply stultification by defendant to urge that it did not know what authority it had given plaintiff. Defendant's president, treasurer, manager, and board of directors had by plaintiff been fully informed, prior to the institution of the action against him, why and for what purpose he had indorsed the carbon company's note; and defendant became thereupon chargeable with knowledge of the fact of plaintiff's authority in the premises. Wass v. Stephens, 128 N. Y. 123, 28 N. E. Rep. 21.

Was the prosecution malicious? The affirmative solution of this query must inevitably follow, if we are correct in the proposition that defendant was chargeable with knowledge of plaintiff's authority to indorse the carbon company's note. It is incomprehensible how defendant, after having authorized plaintiff to indorse the note, could yet successfully contend that its known and persistent prosecution of the plaintiff, for a series of years, upon an accusation of having wrongfully incurred liability as indorser on its behalf, was aught but a wanton and reckless disregard of his right to the enjoyment of property and good repute, and in that sense, at least, "malicious."

Defendant sought to shield itself in this action by the "advice of counsel." Advice of counsel is, however, only a defense in so far as it may tend to prove "probable cause," and disprove "malice," (Railway Co. v. James, 73 Tex. 12, 10 S. W. Rep. 744;) and to have this effect it should appear that the advice of counsel was obtained after a "full, fair, and honest" statement of all the facts concerning the guilt of the person suspected or accused, which have come to the prosecutor's knowledge, (Newell, Mal. Pros. c. 8, § 2, p. 310, and cases cited in the text and notes; Ames v. Rathbun, 37 How. Pr. 289.) This does not appear to have been done in the case now under consideration; for, though we assume Wayland's belief of plaintiff's guilt to be attributable only to the want of sufficient information of the facts when he first sought counsel, and directed the preparation of papers for the purposes of the supreme court action, and the attachment of plaintiff's property therein, the facts transpiring at the subsequent interview between plaintiff and Wayland, and at the directors' meeting, were not so submitted, and non constat but that, if they had been, counsel's advice would have been in accord with the subsequent decisions of the supreme court and court of appeals. But had Wayland, and other officers of the defendant, who were instrumental in the prosecution of the supreme court action, testified to the advice of counsel on such subsequently ascertained facts, their credibility as interested witnesses,

chargeable with the consequences of that prosecution, would have been a matter for the jury's determination.  Bank v. Diefendorf, 123 N. Y. 191, 25 N. E. Rep. 402.

We have refrained from specially noticing the denial of defendant's motion for dismissal of the complaint when plaintiff rested, because any defect in the proof at that time existing was cured by evidence subsequently adduced by the parties, (Plank-Road Co. v. Thatcher, 11 N. Y. 102, 112; Tiffany v. St. John, 65 N. Y. 315, 317; Painton v. Railroad Co., 83 N. Y. 7;) and upon the whole case our conclusion is that the trial judge properly refused to dismiss the complaint, and to direct a verdict for defendant.

The verdict awarded plaintiff $31,700 for damages which had resulted to him from the malicious prosecution complained of in this action, and though but $2,500, the expenses incurred for counsel fees in his defense, was shown to have been plaintiff's actual pecuniary loss, we cannot, upon mature consideration, reach the conclusion that interference on our part with the verdict, only because it is of a large amount, would be justifiable.  The evidence shows, and this fact was conceded by some of defendant's witnesses, that, up to the time of defendant's unwarranted accusation, plaintiff's integrity was unimpeached.  It also appeared that he rated high in financial and mercantile circles, and had been solicited to assume the presidency of a banking institution, besides holding equally important and fiduciary positions in several manufacturing corporations.  The loss of these offices was directly attributable to defendant's prosecution of what has proved to be an unwarranted impugnment of plaintiff's integrity.  In arriving at the amount awarded, the jury justly considered the loss of the offices mentioned; the actual expenses incurred by plaintiff in his vindication; any general impairment of his integrity, in social and mercantile aspect; and the shame and humiliation endured as a direct result of the publicity of his arraignment upon a charge injuriously affecting his trustworthiness, which, emanating as it did from a corporation of defendant's importance, carried with it almost the imprint of truth.  We know not how the extent of plaintiff's loss may be even approximately ascertained and stated in a pecuniary sense; and since the record does not show that the jury were actuated other than from conscientious motives, and a proper discharge of duty, or that their deliberation was warped by undue sympathy for the plaintiff, passion or prejudice against the defendant, we are forced to regard their estimate as conclusive.  " I should be sorry," said Lord Mansfield in Gilbert v. Burtenshaw, Cowp. 230, " to say that in cases of personal torts no new trial should ever be granted for damages which manifestly show the jury to have been actuated by passion, partiality, or prejudice.  But it is not to be done without very strong grounds, indeed, and such as carry internal evidence of intemperance in the minds of the jury.  It is by no means to be done where the court may feel that, if they had been on the jury, they would have given less damages, or where they might think the jury themselves would have completely discharged their duty in giving a less sum.  Of all the cases left to a jury, none is more em-

phatically left to their sound discretion than such a case as this; and, unless it appears that the damages are flagrantly outrageous and extravagant, it is difficult for the court to draw the line." So in Whipple v. Manufacturing Co., 2 Story, 661, it is said by Mr. Justice Story that a verdict should not be set aside as excessive, in cases of tort, "unless the court can clearly see that the jury have committed some very gross and palpable error, or have acted under some improper bias, influence, or prejudice, or have totally mistaken the rules of law by which the damages are to be regulated;" and by Mr. Justice Matthews in Barry v. Edmunds, 116 U. S. 550, 6 Sup. Ct. Rep. 501, that "in no case is it permissible for the court to substitute itself for the jury, and compel a compliance on the part of the latter with its own view of the facts in evidence, as the standard and measure of that justice which the jury is the appointed constitutional tribunal to award." We perceive no error in the rulings of the learned trial judge, and the judgment and order appealed from should be affirmed, with costs. All concur.